KATHERINE O'MALLEY v. CITY OF ST. LOUIS, Appellant.—119 S. W. (2d) 785.

Division One, September 17, 1938.*

---

*NOTE: Opinion filed at May Term, 1938, May 26, 1938; motion for rehearing filed; motion overruled at September Term, September 17, 1938.

*A. A. Alexander* and *T. J. Crowder* for appellant.

16

*Taylor, Mayer & Shifrin* and *Herman Goralnik* for respondent.

18

BRADLEY, C.—Plaintiff sued to recover $10,000 damages for alleged injuries received by falling on the floor of defendant's new auditorium. The jury found for defendant. Motion for new trial

was sustained on giving instructions 4, 5, 6 and 7, requested by defendant, and defendant appealed.

After some preliminary allegations plaintiff's petition alleges: "That said building was dedicated April 14, 1934; and that said defendant invited the public in general to attend the dedication ceremonies held on said day in said building and threw open said building to the public in general on said day; that in compliance with said invitation plaintiff on said day was in said building and was entering the third floor of that part of the building where the large music hall is located, and which part of the building had also been thrown open to the public, when by reason of the rough, uneven and unfinished condition of said floor, and by reason of the projection of a wooden strip above the level of said floor, the heel of one of plaintiff's shoes was caught and plaintiff was caused to trip and fall; and that plaintiff was by reason thereof seriously and permanently injured. . . ."

"Plaintiff further states that defendant was careless and negligent in inviting and permitting the public in general, and this plaintiff in particular, to enter said floor when defendant knew, or by the exercise of ordinary care should have known, that said floor, in its then condition, was dangerous to the life and limb of people if permitted to enter the same; plaintiff further states that she was unaware of said dangerous condition when entering said premises and had not been warned of same by defendant, its agents and servants and did not become aware of same until after she was tripped and injured."

Defendant, at the close of the case, requested, but was refused a demurrer to the evidence, and contends that plaintiff did not make a submissible case, and also contends that there was nothing wrong with its instructions.

Most favorably stated for plaintiff, the evidence shows about as follows: On Saturday, April 14, 1934, plaintiff was in the employ of defendant; worked as a stenographer in the office of the fire chief in the city hall. On the date mentioned there were ceremonies in progress dedicating the new auditorium. Plaintiff, with some friends, left the city hall for the auditorium, in order to witness the dedicatory ceremonies, which were being held on Market Street in front (north) of the auditorium. On arriving, about three-thirty P. M., at the building, plaintiff and her friends entered from Market Street. Many people were at the north first floor windows, and plaintiff and her friends walked up the stairway to the second floor. Satisfactory view could not be had on the second floor and the party walked up to the third floor.

At the top of the stairway from which plaintiff entered upon the third floor there was a marble or terrazzo floor border, estimated to be 2 or 2½ feet in width, and this terrazzo border extended around the corridor. The remaining part of the floor was not carpeted.

Carpeting work was in progress that day, on the third floor, until two-thirty P. M.; nothing more, however, was to be done to the floor proper where the carpet was to be placed. Some of the witnesses described the concrete floor, not including the terrazzo border, as about like a sidewalk, and others as rough concrete, and the concrete floor was described as "trowel finish similar to a basement." The carpeting preparations contemplated a padding on the concrete floor between the north and south terrazzo borders. The concrete floor was ⅝ or ¾ of an inch below the top of the terrazzo border. Against the edge of the terrazzo border, immediately in front of the stairway from which plaintiff entered the third floor, there was a brass parting strip set in the concrete floor. This strip extended up to the top of the terrazzo border. Against the brass parting strip, there was a wood tacking strip. This wood strip, if properly placed, lay flat on the concrete floor, and was about 2¼ inches in width, and about ½ inch thick on the side next to the brass strip, and about ¼ of an inch thick on the other side. The wood strip was attached to the concrete, or was intended to be, by means of wood dowels placed in holes drilled eighteen inches apart in the concrete floor, and small screws passed through the wood strip into these dowels. If properly placed the wood strip is slightly lower than the surface of the terrazzo border. When placed, the carpet was to be anchored to the wood strip.

Plaintiff's evidence tended to show that the wood strip extended about ½ inch above the surface of the terrazzo border between the stairway landing and the concrete floor, and that as she was passing from the terrazzo border to the concrete floor, her shoe heel caught on the extension of this wood strip, causing her to fall and sustain the injuries complained of. Lights were turned on, but of light the evidence was: (By Mildred Andrew) "There was some ceiling lights lit, but a kind of shadow cast on the floor." (By plaintiff); "To me it wasn't very light, there was a shadow cast. Well it (light) wasn't very bright. On this occasion, when we were going up the flight of stairs, I could see very well. At the landing you could see everything, but it wasn't bright up there by any means. Q. You could see fair, couldn't you? A. Oh yes. Q. And the lights were lighted, weren't they? A. They were lighted, but they were dim. I always did say there wasn't a good light."

William C. Murphy, a witness for defendant, testified that he was defendant's "personal officer at the city auditorium;" had charge "of the policing, cleaning the halls and the building. . . . I supervise the whole building, and notice the different conditions as they exist from time to time, such as lights, conditions of the floors and things like that. April 14, 1934 was dedication day. . . . I was ordered to police the building. . . . In my rounds of inspection on the 14th (day plaintiff fell) nor any time prior to that, I did not see on the third floor landing any piece of wood sticking up

above the surface of the landing." Several witnesses for defendant testified that the wood strip on the morning of April 14th was attached to the concrete floor, and did not extend up above the surface of the terrazzo border, but that the top of the strip was about an eighth of an inch below this surface.

December 7, 1934, plaintiff made a written statement which contained this: "I saw this little incline and attempted to step over it. In trying to step over this incline I tripped and fell to the floor. I was later told I tripped over a safety thread that was on the floor close to the level part. I did not see this myself. I do not recall where there were any artificial lights to see. Absence of light did not cause my fall."

Under the ruling in Pulitzer v. Chapman et al., 337 Mo. 298, 85 S. W. (2d) 400, l. c. 410, the statement made by plaintiff on December 7, 1934, may be considered as substantive evidence, and when all the evidence on the subject of light is considered, we are of the opinion that lack of light in no substantial way contributed to plaintiff's fall. Therefore, the question raised by the demurrer to the evidence is this:

Does the evidence tending to show that the wood strip extended ½ inch above the surface of the terrazzo border make a submissible case?

Maxwell v. Kansas City, 227 Mo. App. 234, 52 S. W. (2d) 487, was for damages resulting from a fall caused by tripping on a perpendicular elevation (1¼ inches) in a concrete sidewalk. The roots had lifted the adjacent slab. The plaintiff in that case testified that she "tripped with the right foot on the elevation of that slab; just caught my heel, just the edge of my heel." A judgment for the plaintiff was reversed, but it appears (52 S. W. (2d) l. c. 492, 3) that the court was of the opinion that there was "some other cause" that brought about the fall other than the elevation in the sidewalk.

In Lundahl v. Kansas City (Mo. App.), 209 S. W. 564, the plaintiff was in the service of a residence neighborhood as a night watchman, and "while observing and following a suspicious character, at about 4 o'clock A. M. September 18, 1916, he stumbled and fell on a granitoid sidewalk on Thirty-eighth Street. The walk was laid in connected blocks about six feet square, and the obstruction, or defect therein, consisted in one block having sunk down (at the lowest place) between two and three inches below the next block with which it had been connected on a level." In that case it was held that the question of the city's liability was for the jury. However, the observation was made that the case was "along the border line" of liability and nonliability. The Maxwell case (where the elevation was 1¼ inches) reviews the Lundahl case, and says (52 S. W. (2d) l. c. 491); "If the offset in the surface of the street, of 2 or 3 inches, in the Lundahl case is 'on the border line' between a defect to be left to a

jury to say whether it is actionable, and one to be declared nonactionable as a matter of law, then it would seem that one inch less than that, as in the case at bar, is on this, or the nonliable side of that line. Under all the circumstances, we are unwilling to extend the liability of municipalities to a slighter defect than any heretofore declared.''

In Taylor v. Kansas City, 342 Mo. 109, 112 S. W. (2d) 562, l. c. 564, the above excerpt from the Maxwell case was quoted with approval.

The cases above cited concern defects in sidewalks, but we think they are applicable here. The third floor carpet had not been laid. Only a few people were on this floor. It is true that there were no signs or guards to warn that the third floor was not finished, but this plaintiff saw, or should have seen when she reached the top of the stairway and before she stepped to pass over the terrazzo border. We rule that the elevation of the wood strip ½ inch above the surface of the terrazzo border, under facts here, did not constitute actionable negligence.

It is not necessary to rule the question on the instructions. The order and judgment granting plaintiff a new trial should be reversed and the cause remanded with directions to set aside that order, and reinstate the verdict and judgment for the defendant. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.