JEANNE LUETTECKE, Appellant, v. CITY OF ST. LOUIS, CAESAR GOGGIO and THERESA GOGGIO, his wife.—140 S. W. (2d) 45.

Division One, May 7, 1940.*

*Hall & Todd* for appellant.

*Edgar H. Wayman* and *Jerome Simon* for City of St. Louis.

*Jones, Hocker, Gladney & Grand* and *William G. O'Donnell* for Caesar and Theresa Goggio.

DALTON, C.—This is an action for damages for personal injuries alleged to have been sustained by plaintiff on account of the negligence of defendants. At the close of plaintiff's case, the court directed a verdict for defendants. Plaintiff, thereupon, took an involuntary nonsuit with leave to move to set the same aside. Plaintiff failed to get said nonsuit set aside on motion, and appealed from the judgment dismissing her suit. Damages were asked in the sum of $20,000, hence our jurisdiction.

Appellant assigns error on the court's action in giving instructions in the nature of demurrers to the evidence directing a verdict for respondents.

The petition alleged that, due to the construction and maintenance of a terrace which encroached upon the street, water was discharged upon an inclined sidewalk in front of respondents' (Goggios) property; that ice accumulated on the sidewalk; that due to the construction of the sidewalk on an incline, with a part of the street curb

at the alley extending into and above the level of said sidewalk, a dangerous nuisance was created; that appellant, while using the sidewalk, slipped on the ice, slid toward the alley, struck the projecting curb, and was thrown into the alley and was injured. The answers of respondents were general denials and pleas of contributory negligence.

Appellant says the negligence was as follows: "The negligence of the respondent city consisted in permitting an improperly constructed sidewalk and an ornamental terrace which cast excessive drainage onto that defective sidewalk, which it knew was liable to freeze, and become dangerous to pedestrians, to remain in that dangerous condition long after it knew or ought to have known of the danger. . . . The negligence of respondents Goggio consisted of maintaining a high terrace on their property which caused excessive drainage to run upon a defective sidewalk which they charged with notice was liable to freeze on the incline in the sidewalk and cause it to become dangerous to pedestrians."

The evidence tended to show that for over two years appellant and her husband had been tenants of an apartment house on the east side of South Compton Avenue in the City of St. Louis; that they were tenants there when Goggios purchased the property; that the apartment entrance was about 5 feet above the level of the sidewalk; that seven concrete steps and an iron rail bannister led up to the entrance; that on each side of said steps a terrace extended down to the level of the sidewalk; that the building was back 17 feet from the sidewalk; that a yard or terrace crown 2 feet wide extended in front of the building; that the terrace sloped toward the sidewalk and that the property was immediately south of an alley.

The sidewalk was built in 1928. The permit for construction issued to the former owner provided for a 5-foot sidewalk to be located 5 feet from the curb and 2 feet from the property line. At least this was the regulation then in force. The final measurements by the city, when the work was completed, indicated that the sidewalk was 4.9 feet in width; that it was located 2½ feet from the curb; that the terrace encroached 1½ feet upon the city property; and that a 6 inch grass plot existed between the property line and the edge of the sidewalk. The report shows 12 feet between the curb and the property line, so 2½ feet was unaccounted for. There was evidence that such adjustments in location of sidewalks were permitted to avoid cutting terraces and pushing them back, and that the sidewalk here was in line with that in front of adjoining property.

Appellant offered in evidence an actual survey of the premises made by respondent city's engineer in April, 1936, after appellant was injured February 12th. This survey, and the evidence in connection therewith, shows that the sidewalk is located 2½ feet from the street curb and 4½ feet from the property line; that the sidewalk is

4.9 feet wide; that the foot of the terrace extends from a foot to a foot and a half beyond the property line; that there is a distance of 3 feet between the riser of the first concrete step and the edge of the sidewalk; that the foot of the terrace is about even with said first step; that the end of the curb at the alley extends around from the street into the south side of the sidewalk a distance of 1½ feet and abuts the north end of the sidewalk for that distance; and that this curb extends 2/100 of a foot (about ¼ inch) higher than the sidewalk level. Appellant and her husband, however, testified that this curb extended 2 to 2½ inches above the slab. In view of pictures in evidence and other testimony, including actual measurements, offered by appellant, we assume that the witnesses referred to the height of the curb above the slab in the alley (approximately 2 inches by measurement), rather than above the sidewalk level. Appellant, in brief and argument, apparently concedes that the curb extends only "one-quarter inch above the walk." In any case, the actual measurements offered by appellant would control over mere estimates. [Maxwell v. Kansas City, 227 Mo. App. 234, 52 S. W. (2d) 487.]

The sidewalk slopes from the foot of the steps toward the alley, the difference in elevation being 73/100 of a foot in 22 feet. The north section of the sidewalk, between 2 and 3 feet in length next to the alley, is about an inch lower on the east side than the section on the south, and the northeast corner of the section next to the alley is about 4/100 of a foot (about ½ inch lower than the surface of the paving in the alley). This last section of the sidewalk also slopes slightly to the east or toward the property line, as if the northeast corner had settled. The northwest corner is slightly elevated, as compared with the northeast corner, there being a difference of ½ inch in 4.9 feet.

On the 10th and 11th of February, 1936, according to the U. S. weather bureau records, it was below freezing all day. It snowed on the 11th for two hours. On the 12th the temperature arose from 20 degrees at 1 A. M. to 33 degrees at 2 P. M. It remained at 33 degrees until 9 P. M., except for the 4 P. M. reading of 34 degrees. On the 12th at 3 P. M. there began a freezing rain which continued thereafter until the following day. The hourly amount of freezing rain was not indicated on the records.

About 7:30 P. M. on the 12th, appellant started from her home to the store. She weighed about 220 pounds, wore shoes with military heels, neither high nor low, but no galoshes or rubbers. It was not raining at the particular time. She came down the steps and walked north along the center of the sidewalk. She observed that the steps and sidewalk were covered with ice and that the sidewalk was slippery and treacherous. She held to the rail as she descended the ice covered steps. She walked slowly, because it was too dangerous to walk fast, and so that she would not fall and hurt herself. She did not notice any rough places on the ice where she walked. When she had gone

north some 8 to 12 steps and had passed a little tree, which the evidence showed was 7½ feet south of the alley, she started to slide. She slipped on the ice. How far she slid she could not say, she went too fast. Her left foot hit the curb where it extended above the sidewalk. She was thrown into the alley, fell on her right side and was injured. There was a mark about ½ inch long on her left shoe. She couldn't say whether she would have retained her balance after she started slipping, even if she hadn't hit anything. She could not locate the place where she began slipping, at one time fixing it about even with the little tree, at another fixing it 5 feet from the alley, and finally refusing to give the location at all, saying that she couldn't say how far she was from the alley, and that she had no idea of the distance.

She further testified that, because of the ice on the sidewalk, she had already lost her balance and was slipping toward the alley before her foot struck anything; and that she did not know how far she would have gone if she hadn't hit something. There is also some showing in the record that she did not know what she hit and her counsel, in statements to the court during the trial, took the position that she didn't know what she "stumbled over;" and that she slipped somewhere on the north side of the little tree.

When appellant's husband left his work at 5 P. M. that afternoon, it was raining and it turned into sleet. At 5:15 P. M., when he arrived at home, it had started to freeze, and was slippery, and the sidewalk in front of the apartment looked about the same as other sidewalks. There was evidence that an hour after appellant was injured it was freezing and the ground was covered with a coating of ice; there was a coat of ice on the sidewalk and it was thicker on the section of the sidewalk next to the alley. The ice on this last section seemed to come from the side of the terrace "and it appeared to be like a stream of water." The next day there was still ice on the sidewalk, about the same as the night before, and it was thicker on the last section of the sidewalk next to the alley. The witness could not estimate its thickness, except to say it was thicker on the last slab than on other parts of the sidewalk. You could see where "the water had flowed in a certain direction; that is, from the terrace toward the other part of the sidewalk and had made marks accordingly." This ice on the last section of the walk was rough, how rough the witness did not say. "Lines of streams" or ridges, 2 to 15 lines, according to the best estimate witness could make, extended ¾ of the way across this section of the sidewalk, measured from the terrace side. Witness could not say when this ice formed but he didn't notice it when he returned home before his wife was injured.

With reference to the liability of respondents Goggio, the appellant contends that when an abutting property owner maintains upon his premises a structure (in this case an artificial terrace extending beyond the property line) which causes an artificial accumulation and dis-

charge of water upon a public sidewalk, which by freezing will make the use of the sidewalk dangerous, he is guilty of negligence, and will be held liable for injuries resulting therefrom. Appellant contends that it was obvious that there would be an excessive discharge of water from the terrace onto the inclined and defective sidewalk, and that the water would freeze; that the sidewalk was defective because of its location near the foot of the terrace and with the curb projecting into and above the level of the sidewalk at the north end, forming an obstruction at the bottom of the incline; that these conditions together greatly increased the danger to pedestrians, created a public nuisance, and caused appellant's injuries.

Appellant concedes that "the respondents Goggio would not be liable for maintaining the defects in the sidewalk, as it is the duty of the respondent city to maintain its improved sidewalks in a reasonably safe condition." Appellant says the sidewalk was defective and that the city knew of the conditions affecting the sidewalk, since its record disclosed them and they had existed for seven years. Appellant refers to the existence of the terrace, its extension into the street, the incline of the sidewalk, the location of the walk with reference to the terrace and to the curb, and the extension of the curb around and into and above the level of the sidewalk at the foot of the incline. Appellant insists that respondents knew that it would rain; that water would run down hill; that water would freeze and persons would be liable to fall on the walk and be injured.

It was the duty of the respondent city to keep the sidewalk in a reasonably safe condition for persons traveling thereon. [Norton v. St. Louis, 97 Mo. 537, 11 S. W. 242.] The respondent city was not liable for the slippery and treacherous condition of the sidewalk produced by the freezing rain immediately before appellant was injured. It was a general condition produced by natural causes and appears to have been general throughout the city. The condition was of recent origin and danger therefrom obvious. [Barrett v. Town of Canton, 338 Mo. 1082, 1086, 93 S. W. (2d) 927.] There is no contention that the city was negligent with reference to this ice. The respondent city was not required to keep its sidewalks in an absolutely safe and perfect condition. It was not liable for every slight or trifling defect or obstruction or mere inequalities or irregularities of the surface of such sidewalk. [Taylor v. Kansas City, 342 Mo. 109, 112 S. W. (2d) 562, 564; Maxwell v. Kansas City, 227 Mo. App. 234, 52 S. W. (2d) 487, 491; O'Malley v. City of St. Louis, 343 Mo. 14, 119 S. W. (2d) 785.]

It was the duty of respondents Goggio to exercise ordinary care to guard the public from injury from any artificial accumulation and discharge upon the sidewalk of surface water, which might freeze and make the walk dangerous. The law is well stated in Stith v. Newberry Co., 336 Mo. 467, 481, 79 S. W. (2d) 447, relied on by ap-

176

pellant. "An abutting property owner is not liable for injuries resulting from snow and ice on the sidewalk in front of his premises where it came there by natural causes, either from originally falling there or from drainage there because of the natural drainage of his property. In such cases the responsibility for maintaining a safe condition·for travel and the liability for failing to do so is that of the municipality alone. (Citing cases.) This is but one branch of the general rule that the abutting owner is not responsible for the condition of the sidewalk in the street in front of his property. However, when the abutting property owner for his own private purpose or convenience changes the situation by putting a hole in the sidewalk or an obstruction thereon or building structures projecting over it or otherwise renders its use hazardous by doing anything under, upon or over it, 'the law imposes on him the exercise of reasonable care to guard the public from injury.' . . . Therefore, when the abutting property owner constructs or maintains upon his premises a structure which causes an artificial accumulation and discharge of water upon a public sidewalk, which by freezing will make the use of the sidewalk dangerous, he is guilty of negligence and will be held liable for injuries resulting therefrom. [Citing cases.] . . . A qualification of this rule which has been made in some cases is that where a change is made or a structure erected, entirely upon the premises of the abutting property owner, in a usual and proper manner and not for the purpose of collecting and discharging water ·upon the sidewalk, the landowner is not liable even though some water is caused to run upon the sidewalk as a mere incidental result of the condition created." [Citing cases.] The same qualification apparently applies to lawful extensions over the sidewalk itself.

In the case of Stith v. Newberry Co., supra, the defendant maintained an awning, and a casing therefor, across the front of its store building. The awning was permitted to hang out from under the casing, creating an artificial structure over the sidewalk. Snow and ice accumulated in the folds and slack of the awning, and, as it melted, a considerable quantity of water was discharged in a continuous stream upon one place in the sidewalk. The water ran down and across the sidewalk and later froze so that there was a slab of ice 2 to 2½ feet in width across the 12 foot sidewalk. The plaintiff walking along on the sidewalk, which was apparently clear of snow and ice, stepped on this strip of ice and fell and was injured. There was evidence that the condition of the awning was created by defendant's acts; that the condition had existed for sometime and was known or could have been known to defendant in time to have remedied it. It was held that the facts were sufficient to make a case for the jury. The facts here, however, are very different.

The burden of proof rested upon appellant to offer sufficient competent credible testimony to establish negligence, proximate cause

and damage. "It is elementary law that a plaintiff, as in this case, suing for damages for personal injuries resulting from negligence, must, before he is entitled to a judgment, produce evidence that the defendant against whom he seeks a judgment was guilty of negligence and that such negligence directly contributed to the injuries for which damages are sought." [Felber v. Union Electric Light & Power Co., 340 Mo. 201, 100 S. W. (2d) 494, 496.]

Whether or not appellant made a submissible case for the jury was properly tested by the demurrers to the evidence offered by the respective respondents at the close of appellant's case. The demurrers admitted all facts shown in evidence and all reasonable inferences to be drawn therefrom. A demurrer to the evidence should be sustained only when facts and the inferences to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ. [Cech v. Mallinckrodt, 323 Mo. 601, 609, 20 S. W. (2d) 509.]

Was the evidence, considered in a light most favorable to appellant, sufficient to make a case for appellant against either of the respondents? In the view we take of the case it is only necessary to determine whether the evidence shows that the negligence, if any, of the respondents caused or contributed to appellant's injuries. We think the cause of appellant's injuries, on her own testimony, remains a matter of doubt, uncertainty, conjecture and guess. Her counsel, in effect, concedes the weakness of her case as follows: "Appellant told the facts, and if the respondents contend that under the circumstances surrounding her casualty she was obliged to say *what caused her to fall* with greater definiteness, *they are asking for what she could not state.* Under adroit cross-examination she was induced to say that she 'might' have fallen. So she might have and again she might not if her foot had not struck the end of the curb, *and perhaps the rough ice, for she was walking right towards the rough ice.*" (Italics ours.)

Appellant's position is, however, that the jury should have been permitted to bridge the gap and make a guess on whether appellant's injuries were caused by any negligence of the respondents.

The evidence shows that appellant fell on the pavement in the alley and was injured. Her left knee was badly bruised, her right ankle dislocated, certain bones in her right foot were broken and her back was hurt. The evidence fails to show with reasonable certainty that appellant slipped on ice that formed from drainage from the terrace, rather than on ice which formed on the sidewalk from the freezing rain. It is conceded that a general icy condition existed. The entire sidewalk was covered with ice and was slippery and treacherous. There was no evidence that water from the terrace ran upon the sidewalk or formed ice upon any part of the sidewalk except the last section which was lower than the rest of the walk.

The evidence fails to establish with reasonable certainty that the water which came upon this last slab from the terrace was excessive or appreciable as compared with the water from the freezing rain. There was no evidence that the terrace collected water or caused an accumulation of water or discharged any considerable or appreciable quantity of water at any place or upon the last section of the sidewalk. The evidence that the ice was thicker on the last section than the thin ice on the rest of the sidewalk means nothing. The references are to thicker and thinner, to rough and smooth ice, to ridges or lines, but there are no facts stated in the evidence as to the extent of thickness or roughness. The witness even refused to estimate the extent of thickness or roughness. No facts were presented from which the jury could find that the rough, thick ice was more dangerous than the thin, smooth ice or that the rough thick ice with ridges and lines was more dangerous than the thin slippery ice from the freezing rain on the inclined sidewalk. In fact the evidence fails to establish that appellant had reached the rough ice at the time she slipped and lost her balance. Several times she definitely located the place where she slipped at a point away from the rough ice. Later, she expressly refused to say how far she had gone when she started to slip or how near she had approached the alley or how far she slid. She lost her balance and went so fast she could not tell how far she went before her foot hit some obstruction and she fell in the alley. The evidence, therefore, fails to establish that appellant was caused to fall by the rough ice on the last section of the sidewalk. Counsel, in effect, concedes that she was only approaching the rough ice when she slipped.

It is further apparent that there is no satisfactory evidence that appellant's fall was produced by any obstruction. She had lost her balance and was sliding before she reached the obstruction. She did not say that she would not have fallen, had there been no obstruction. She testified: ''I can't say if I could have retained my balance after I started slipping, if I had not hit anything.'' There is no contention that her injuries were produced by contact with an obstruction at the end of the sidewalk rather than by her fall into the alley. It is mere conjecture to say that her injuries were caused by slipping into the obstruction and falling, rather than by slipping into the alley and falling. It would be merely a guess to say that, except for the extension of the curb into and above the level of the sidewalk, appellant would not have been injured. Appellant, therefore, did not sustain the burden of proving that any defective condition of the sidewalk, or that any rough ice from drainage, caused or contributed to her fall and resulting injury.

Appellant is confronted by another rule of law. We have said that the evidence indicates that appellant slipped on the smooth, slippery ice which formed on the sidewalk from the freezing rain; that she lost her balance and slid toward the alley, where she fell and

was injured. Assuming that there is some doubt that such slipping and falling was the cause of her injuries the evidence fails to indicate the true cause with any reasonable certainty.

"If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action." [Warner v. St. Louis & Meramec Railroad Co., 178 Mo. 125, 134, 77 S. W. 67; State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 593, 116 S. W. (2d) 99, 102; Cole v. Ulmann Grain Co., 340 Mo. 277, 100 S. W. (2d) 311, 317; Hayes v. S. S. Kresge Co. (Mo. App.), 100 S. W. (2d) 325, 329.] It is apparent from the testimony that the entire question of proximate cause is left in doubt, conjecture and uncertainty and that even appellant herself does not know what caused her fall. The testimony does not show with reasonable certainty that either the rough ice on the last section of the sidewalk, or the obstruction caused by the extension of the curb above the sidewalk, caused or contributed to appellant's fall in the alley. Nor does it show that her fall was not caused by slipping on the smooth ice and losing her balance before she even reached the location of the rough ice or the obstruction formed by the curb.

The demurrers to the evidence were therefore properly sustained. The judgment is affirmed. *Hyde* and *Bradley, CC.*, concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.