NADINE ROTHE, a Minor, by VICTOR ROTHE, her Next Friend, v. JOHN S. HULL, Appellant.—No. 38684.—180 S. W. (2d) 7.

Division One, May 2, 1944.

*Hook & Thomas, Inghram D. Hook* and *Harry L. Thomas* for appellant.

928

*Chas. V. Garnett* and *Donald W. Johnson* for respondent.

DALTON, C.—This cause comes on reassignment after re-hearing. Without quotation marks, we adopt a portion of the prior opinion.

Action to recover damages in the sum of $50,000 for an assault. In substance it is alleged that plaintiff employed the defendant, an osteopathic physician and surgeon, to remove her appendix; that in performing the operation he removed both her appendix and Fallopian tubes; that the removal of the tubes was without her consent and he thereby committed an assault. The answer is a general denial. Verdict for the defendant.

The court ruled that instructions Nos. IV and VII given at request of defendant were erroneous and for that reason sustained the motion for a new trial. Defendant appealed.

Plaintiff was suddenly stricken with a violent pain in her abdomen. Defendant called at her home to attend her. He made an examination, obtained a blood specimen and went to his office for an examination of the specimen. After the examination, and over the telephone, he directed that plaintiff be taken to the hospital, where he arranged for the operation. The husband and parents of the plaintiff went with her to the hospital. The operation resulted in the removal of the appendix and Fallopian tubes.

In substance, there was evidence tending to show that during the performance of the operation, the defendant informed plaintiff's husband that the tubes were in a diseased condition, would no longer function and should be removed. There also was evidence tending to show that the husband authorized the defendant to use his best judgment with reference to the matter.

Defendant contends, and plaintiff denies, there was evidence tending to show that the examination of plaintiff by the defendant at her home indicated, in addition to an acute appendix, an enlargement of the tubes and tenderness in the tube region; that the defendant so informed plaintiff, who stated that she wanted her condition taken care of and would leave it to his judgment. In other words, defendant contends that plaintiff gave him general authority to use his best judgment as to the extent of the operation, and thereby impliedly authorized him to remove the tubes, if he thought necessary under existing conditions.

Appellant assigns error on the court's ruling that instructions IV and VII were erroneous. Appellant contends they were correct under the pleadings, the law and the evidence.

930

. Instruction IV is as follows: "The court instructs the jury that if the plaintiff consented to the operation which resulted in the removal of both Fallopian tubes by giving, if so, general authorization and permission to the defendant to use his reasonable care, skill and judgment to correct. any condition found during the operation and if you find and believe that the removal of said tubes during said operation was necessary and advisable in his reasonable judgment for the preservation of her life or health, your verdict must be for the defendant."

The instruction conforms to defendant's theory of implied authority to remove the tubes, if in his judgment they should be removed, but respondent says the instruction was not supported by the evidence. Of course, the giving of the instruction was error unless it was supported by evidence. Gundelach v. Compagne Generale Transatlantique (Mo. Sup.), 41 S. W. (2d) 1, 2. Substantial evidence in the particular case is required. In re Thomasson's Estate, 347 Mo. 748, 148 S. W. (2d) 757, 762; King v. Kansas .City Life Ins. Co., 350 Mo. 75, 164 S. W. (2d) 458. But respondent insists that "on appeal from an order granting plaintiff a new trial . . . on the ground that instructions given at defendant's request were erroneous, the evidence must be viewed most favorably to plaintiff." Clarke v. Jackson, 342 Mo. 537, 116 S. W. (2d) 122; O'Malley v. City of St. Louis, 343 Mo. 14, 119 S. W. (2d) 785. The cases cited are not applicable on the issues presented here. The rule is that we may consider only the evidence most favorable to a defendant recovering a verdict in determining whether an instruction given at defendant's request is unsupported by evidence. Moffett Bros. & Andrews Commission Co. v. Kent (Mo. Sup.), 5 S. W. (2d) 395, 402; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S. W. (2d) 562, 570; Poague v. Kurn, 346 Mo. 153, 140 S. W. (2d) 13, 17. It is immaterial whether the issue is presented by plaintiff on appeal from a judgment entered on the verdict for defendant, or on an appeal by a defendant from an order of the trial court granting a new trial on the ground that defendant's instruction is unsupported by the evidence.

Was there substantial evidence in the record to support the particular instruction? As stated, respondent contends that instruction IV was "prejudicially erroneous because there is no evidentiary support for a finding that plaintiff consented to removal of her Fallopian tubes by giving authorization to defendant to correct any condition found during the operation." Respondent says: "Instruction No. 4 does not deal with consent in general terms. It particularizes. It attempts to pick out a particular kind of consent and to inform the jury that, if that particular kind of consent was given, there could be no recovery. It permits the jury to find the presence of consent from 'general authorization and permission to defendant to use his reasonable care, skill and judgment.' It singles out a par-

ticular fact, and directs the jury to return a verdict for defendant if it finds the existence of that particular fact. Therein lies its vice. There is no evidence in the record upon which a finding of that particular fact can be based. . . . There was no evidence whatever that plaintiff gave a general authorization to defendant to correct any condition found during the authorized operation for appendicitis.''.

There is no suggestion that the evidence was not adequate to support a finding that defendant found and believed from conditions appearing at the operation ''that the removal of said tubes during said operation was necessary and advisable in his reasonable judgment for the preservation of her life or health'' and, accordingly, we shall review only the evidence most favorable to defendant on the issue upon which the instruction is attacked.

Plaintiff offered the deposition of defendant, parts being read by plaintiff's counsel as admissions against interest and the remainder being read by defendant's counsel in explanation of the parts read by plaintiff's counsel. Defendant testified as follows:

''At the time I first examined her (plaintiff) and I told her that from my pelvic abdominal operation (examination) that there was a tenderness in the region of the tubes, I could feel an enlargement, that the history of this acute distress with the general abdominal pain radiating to the right side, the nausea, the chills and the temperature pointed to a flare-up of an appendix which could very possibly be associated with any other pelvic involvements that she might have present. . . .

''I said that with the history of this case and findings of my examination, and after telling them (plaintiff and another) that I had discovered enlarged and tender structures in the tube region that in addition it was not unusual for an appendix to be involved, associated with other pelvic pathology, and very often the paramount cause of such, and that I considered this case a hospital case, an emergency, cause of the acuteness that this attack had struck her with, and the associated blood picture, nausea, temperature, pain which localized into this right side region and that I felt it was better to make an exploratory type of incision and attend to what we found was wrong, and it was better to do that than to take chances on an appendix that could acutely flare up with pelvic pathology and maybe rupture and they agreed that that was right because they immediately sent her in. . . .

''She said that she had known that she had trouble in the past with her tubes from the distress that she had had, and pain, and had been informed of such examinations of other doctors, she did not say who, and that she certainly wanted her condition taken care of and she would leave it to my better ▆ judgment, and she was taken into the hospital and operated with that understanding. . . .

"It was my opinion that she had an acute appendix that made her an emergency case in the presence of other pelvic pathology. . . . I told them that we would operate her for the purpose of determining a final procedure. It was an emergency operation. . . . I didn't tell them definitely that I was going to go in there to take out the appendix alone. . . . I did not say specifically that I was going to operate her for an acute appendix . . . At the hospital her husband told me to do what I thought was necessary, and that was done."

We think the evidence was entirely adequate to support the instruction as given. It is immaterial that some of the quoted evidence appeared in the deposition. Pulitzer v. Chapman, 337 Mo. 298, 85 S. W. (2d) 400, 411 (10) ; Berry v. Peacock Coal & Development Co. (Mo. App.), 253 S. W. 456, 460 (13) ; Woelfle v. Connecticut Mutual Life Ins. Co., 234 Mo. App. 135, 112 S. W. (2d) 865; Scoggins v. Miller (Mo. App.), 80 S. W. (2d) 724, 728.

█ Respondent next contends that instruction IV was further erroneous because it told the jury that a "general authority given by plaintiff to correct any condition found during the authorized appendicitis operation, justified and authorized the removal of her tubes which was an entirely different operation involving risks and results not contemplated in the authorized operation." This complaint is based upon the theory that the alleged general authorization by plaintiff to defendant applied solely to the cure of a specific condition, to wit, acute appendicitis; that there was no evidence of consent to perform a different operation (different in extent) so as to include the removal of Fallopian tubes; and that there was no evidence of diagnosis of any other trouble or any authorization to correct it.

Considered most favorably to defendant the evidence shows no mistaken diagnosis and no general authority to correct only the appendicitis condition, but it does show a general authorization of the defendant to correct any condition found with reference to the appendix and tubes.

█ Respondent next contends that defendant was bound by his own personal testimony at the trial; and that his testimony at the trial directly conflicted with his prior testimony and concluded him from any submission of the issue of general authorization as including (by implication) authorization for the removal of the tubes. Respondent admits that defendant testified at the trial that plaintiff had told him to "take care of things you feel is necessary," but respondent insists that defendant's other testimony tends to show that neither plaintiff nor defendant understood that plaintiff was thereby consenting to the removal of her Fallopian tubes; that defendant had made no statement that he was taking out her Fallopian tubes; that defendant had diagnosed her trouble as acute appendicitis; that the general direction relating to the "operation agreed upon"

constituted neither actual nor "apparent" consent for the removal of tubes; and that defendant did not consider plaintiff's statement, to "do what is necessary," as including authority to remove the tubes.

Defendant testified on cross examination at the trial as follows: "Q. Now, did you say awhile ago in your direct examination that she (plaintiff) did not consent at the house to the removal of her tubes? A. There was nothing said about removing her tubes. Q. Nothing said about that? A. Because I didn't know at that time whether I was removing tubes or not. Q. Well, what did you tell her about it? A. I discussed it in the room, that this was a suspicious appendix in the presence of pelvic pathology, and she volunteered on her own part and said, 'Do everything that is necessary, doctor, I want to get this thing fixed up.' Q. Now, is that the statement that you say authorized you to go ahead and render this girl childless for the rest of her life? . . .. A. Not knowing that I was going to remove tubes, had no influence on me from that standpoint. The Court: I didn't get the answer. The Witness: Not knowing that I was going to remove tubes before I got to the operating room, it had nothing to do with it. Q. Well, how did you expect her to consent to something she didn't know about? A. She told me to use my judgment. Q. Well, I say, it was that statement of hers on which you base your action in ■■■ this case, isn't it? A. I consulted her husband."

Concerning his deposition testimony, defendant testified: "Q. Is there something in there that would tell them that you were thinking about taking out her tubes? A. Nothing had been stated that I was going to take any tubes out. Q. Of course not, and yet you say because she said 'Go ahead' that you accepted that statement as authorizing you to take her tubes out when you hadn't told her anything about the possibility of it? A. I would not say that I considered anything at that time about taking out tubes. Q. No, but you accepted her statement made at that time as authorizing you to take them out, didn't you? A. I wouldn't have asked any one else if I would have figured her answer final. Q. Oh, then you didn't accept that as authority to take her tubes out, did you? A. Not fully. Q. Not fully? A. Because I didn't know at that time that I was taking any tubes out. . . . Q. Did you have any consent from her to take her right tube out except this statement that she made out there at the house that you now say you didn't accept as full authority? A. From the admission on her part that she told me to take care of her condition, and she went to the hospital."

The issue submitted by the instruction was whether plaintiff, by general authorization to defendant, impliedly authorized him to remove her tubes. No question of "apparent consent" by plaintiff, which was believed and understood by defendant to be actual consent, is involved. No question is presented concerning the admissibility

in evidence of defendant's opinion, impression or mental conclusions concerning what was said by the plaintiff. But respondent says that the evidence of defendant's mental evaluation of plaintiff's general authorization was such that defendant was concluded by his own testimony from submitting the general authorization as including any implied authority for the removal of tubes; and that his testimony was equal to a judicial admission and conclusively shows that defendant "removed plaintiff's tubes without her knowledge or consent." Steele v. Kansas City Southern Ry. Co., 265 Mo. 97, 175 S. W. 177; Murray v. St. Louis Transit Co., 176 Mo. 183, 75 S. W. 611. The cases cited are not controlling in view of the facts before us. We hold that the evidence (tending to show that defendant did not consider that he then had final and absolute permission to remove the tubes, if in his judgment removal was required) was not so clear, definite and certain, nor so squarely conflicting with his prior testimony, as to preclude defendant from submitting the issue of implied consent from general authorization to the jury. The evidence was all to be weighed and considered by the jury in determining the ultimate question submitted. All conflicts between the cross examination and defendant's direct and deposition testimony were for the jury.

Respondent further contends that in view of the fact that instruction IV directed a verdict for defendant upon the theory of implied consent, when there was no evidence of implied consent, it was also erroneous in not requiring the jury to find either that an emergency existed on account of the diseased condition of the tubes or that plaintiff was unable to give consent during the operation. Respondent states the rule (the correctness of which we need not determine) to be that "in the absence of express consent, defendant would be justified in removing plaintiff's tubes only if an emergency existed because of the diseased condition of the tubes, and (when) plaintiff's consent could not be obtained." Respondent says that it was for the jury to say (1) whether the conditions and necessities which would authorize defendant to remove the tubes did exist and (2) whether or not plaintiff had the mental ability and was able to give consent during the operation. We have held that there was evidence to support a finding of implied consent from the general authorization, hence we need not consider these matters.

Instruction VII is as follows: "You are instructed that, in determining whether the plaintiff consented to the operation which resulted in the removal of both Fallopian tubes, you may consider whether authorization to remove said tubes was given by the plaintiff herself or by any other person, if any, authorized to so act for her during the period, if any, of her mental or physical inability, if any, to act for herself, and if you so find your verdict will be for the defendant."

■ Respondent says this instruction was unsupported by evidence in the same manner as instruction IV, to wit, that there was no evidence tending to show an implied consent for the particular operation because of the general authorization testified to by defendant. We have ruled this objection against respondent. Respondent next says that the instruction was "erroneous and contrary to law because it did not require the jury to find that plaintiff was in fact incapable of acting for herself at the time her husband acted for her, if he did"; that the instruction wholly failed to require a finding that plaintiff "was not capable of acting for herself at the time the consent of the husband was obtained"; that it was "clearly erroneous on that account"; and "that the husband's authorization would not justify defendant in performing the tubal operation or excuse him from liability therefor unless plaintiff was incapable of acting for herself at the time the consent of the husband was obtained." In this connection respondent says that there was "a conflict in the evidence as to plaintiff's mental ability to consent while on the operating table"; and that it is only when the wife is incapable for some reason of giving her own consent, that the consent of the husband . . . would justify the operation and relieve the surgeon from liability." The instruction was not erroneous on the grounds stated, because it clearly required a finding of mental or physical inability of plaintiff to act for herself before permitting a finding that another could or did act for her.

The court erred in granting plaintiff a new trial on the theory that instructions IV and VII were erroneous. Respondent has briefed no other points to sustain the action of the trial court in granting a new trial.

The judgment is reversed and the cause remanded with directions to enter judgment for the defendant on the verdict of the jury. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.