Janet SAMUELS, a Minor by Her Mother and
Next Friend, Mrs. Audrey Samuels,
Plaintiff-Appellant,

v.

Mrs. Roseanna KLIMOWICZ, Defendant-
Respondent.

No. 50022.

Supreme Court of Missouri,

Division No. 1.

July 13, 1964.

Melvin L. Kodas, Kansas City, Mo., McAnany, Van Cleave & Phillips, Willard Phillips, Kansas City, Kan., for appellant.

Thos. J. Conway, Jr., Popham, Thompson, Popham, Trusty & Conway, Kansas City, for respondent.

DALTON, Judge.

This is an action for $35,000 damages for personal injuries sustained by plaintiff, a ten-year-old girl, when she was struck by an automobile operated by defendant on Ann Avenue, between Sixth and Seventh Streets in Kansas City, Kansas. Verdict and judgment were for the defendant. Thereafter, a motion for a new trial was timely filed, argued and overruled. Plaintiff has filed notice of appeal to this Court.

At about 5 p. m. on February 26, 1960, plaintiff, her older sister Judith, and a cousin, Patricia Anson, had been shopping on Minnesota Avenue in Kansas City, Kansas, and were walking generally in a southeasterly direction on their way home. They passed through the grounds of the Municipal Library, which lies between Minnesota and Ann Avenues, at which time they were joined by another of plaintiff's cousins, Clarice Crispin. It was daylight and a clear, cold day. There was some snow about the parking meters along the walks and there was snow on the library grounds, but Ann Avenue, an east-west blacktopped street, was clear of snow and was dry. Ann Avenue has a slope downgrade to the east of from ten to fifteen degrees. The girls were playing a game, referred to as "follow the leader," as they came across the library grounds. They then went down the main steps south of the library and started east down the hill along the sidewalk toward Sixth Street. The evidence is conflicting as to where certain cars were parked on the north side of Ann Avenue but plaintiff's evidence tended to show that at least two cars were parked east of the library steps. The children intended to cross Ann Avenue and to go

into a tunnel on the south side of the street and they started across the street at a point about thirty-three steps east of the main south steps of the library. Ann Avenue was thirty-nine feet in width, with parking on each side and two marked lanes for traffic between the parked cars. The intersections to the east and west, at Sixth and Seventh Streets respectively, were regulated by traffic lights. Judith had been leading the group, but there was testimony that plaintiff was in the lead and also that she was the third in the line as they attempted to cross the street.

Plaintiff testified that, when she was about a car's width south of the north edge of the street, she looked to her right, or west, and could see as far as Seventh Street. She saw one truck coming slowly from the west. When she looked to her left, or east, the parked cars did not interfere with her view and she saw no traffic approaching. She then started walking across the street. She heard no horn or screeching tires and had no personal knowledge of being struck by defendant's car. The first thing she remembered was that she was lying in the street. She did recall that she was more than half way across the street before she was struck. The front of defendant's car struck plaintiff and threw her in the air and she fell some twelve feet in front of where defendant's car was brought to a stop. Defendant's car was a red Studebaker Station Wagon and it left skid marks thirty-two feet seven inches in length, indicating a minimum speed of twenty miles per hour. There was evidence that defendant's car had been traveling approximately fifteen to twenty miles per hour. Defendant did not sound her horn at any time prior to the collision, but immediately after the collision she identified herself as the driver of the motor vehicle that struck the plaintiff. Defendant told a police officer at the scene that plaintiff was right at the point of impact before she thought there might be a collision. At the moment of impact defendant said her speed was fifteen miles per hour. Defend-

ant also testified that plaintiff was about six feet south of the north curbline of Ann Avenue when defendant first saw her. "She was just standing at the edge of the parked cars a little way out from the parked car." Defendant also testified that, at the time she first saw plaintiff she realized that there was "some danger" of an accident occurring; however, she took no action, although she could have stopped her car within the distance separating her car from the plaintiff. When she saw plaintiff start across the street she commenced a normal braking action. A small, round, rear-vision mirror was broken from the left side of defendant's car and was found in the street.

At this time we shall not further review the defendant's personal testimony and the other evidence in the case, but it will be stated in ruling appellant's second assignment of error. Nor need we review the evidence as to the extent of the injuries sustained by plaintiff as a result of the collision with defendant's automobile.

Appellant first contends that, "The Court erred in giving Instruction No. 6 offered by defendant because said Instruction No. 6 was not a proper converse of plaintiff's verdict directing Instruction No. 2 which submitted separate theories of defendant's negligence in the disjunctive while said Instruction No. 6 did not require the jury to negate all of plaintiff's disjunctively submitted theories of defendant's negligence."

■ Respondent does not question appellant's "assertion that a defendant's converse instruction must negative all submissions, if the plaintiff's verdict-directing instruction is in the disjunctive." The rule is that, "In a case in which more than one specific charge of negligence is submitted in the disjunctive, a converse verdict-directing instruction must require a finding on all the charges of negligence submitted by plaintiff." Martin v. Lingle Refrigeration Co., Mo.Sup., 260 S.W.2d 562, 566 [1, 2]; Johnson v. St. Louis Public Service Co.,

Mo.Sup., 255 S.W.2d 815, 816; Pettus v. Berger, Mo.Sup., 354 S.W.2d 863, 864; Fellman v. St. Joseph Light & Power Co., Mo.Sup., 334 S.W.2d 60, 62 [1, 2].

In order to properly consider the above assignment, we must first review plaintiff's Instruction No. 2 by which her case was submitted to the jury and then we shall set out, haec verba, defendant's Instruction No. 6.

Instruction No. 2 submitted a finding that plaintiff was a pedestrian and proceeding southwardly across Ann Avenue; that she was not guilty of negligence as submitted in Instruction No. 7; that defendant was driving her car east on Ann Avenue and approaching the plaintiff's path; that the defendant in the exercise of ordinary care saw or could have seen the plaintiff proceeding across the street; that the defendant then knew or in the excercise of ordinary care should have realized that plaintiff was not aware of the approach of defendant's car; that *the defendant could then in the exercise of ordinary care have stopped her car, or sounded a warning* and thus have avoided colliding with plaintiff; that defendant failed to stop her car before colliding with plaintiff, or failed to sound her horn before colliding with the plaintiff; that such failure, if any, was negligent; that the collision occurred with plaintiff; and that as a direct result of such negligence plaintiff was injured. Upon such findings, a verdict was directed for plaintiff and against defendant.

As appears from Instruction 2, two assignments of negligence were submitted to the jury and they were submitted in the disjunctive, towit: "negligent failure to stop" and "negligent failure to sound a warning" and, therefore, defendant's converse instruction to be in proper form necessarily had to dispose of both of these assignments. However, plaintiff-appellant asserts, as stated, that it did not do so, but we think that it did. Instruction No. 6 is as follows:

"The Court instructs the jury that if you find and believe from the evidence that de-

fendant could not have by the exercise of ordinary care seen the plaintiff proceeding across the street and could not have realized or know, in the exercise of ordinary care, that plaintiff was unaware of the approach of defendant's automobile, if you so find, and if you further find that defendant in the exercise of ordinary care could not have seen and realized plaintiff was in a position where there was danger of collision between defendant's automobile and plaintiff, *in time thereafter, by the exercise of ordinary care, and with the means at hand, to have stopped defendant's automobile and thus and thereby have avoided the impact between plaintiff and defendant's automobile,* if you so find, *or to have sounded a timely and effective warning of the approach of defendant's automobile, and thus and thereby have avoided impact between plaintiff and defendant's automobile,* if you so find, then you are instructed that plaintiff is not entitled to recover in this action and your verdict must be in favor of defendant." (Italics ours.)

The instruction is rather repetitious in form and does not as clearly and definitely as it might have done, by the use of different language, submit the necessary findings for a converse instruction, nevertheless we think that it sufficiently *required a finding that defendant under the circumstances submitted could neither have stopped nor have sounded an effective warning and thus and thereby have avoided the impact between plaintiff's person and defendant's automobile.*

■ The instruction might well have used the terms "neither * * * nor," or some other terms to clearly have required the jury to find, as a requirement to a verdict for defendant, that defendant was not negligent in either of the two respects submitted in the disjunctive in Instruction No. 2, yet the terms and words used in Instruction No. 6 were terms and words in common and ordinary usage and were no doubt well understood by the members of the jury. We think the jurors would have understood the

submission to mean that they could not find for defendant unless they found that defendant could not have stopped or sounded a warning in time to prevent the collision.

■ It has been well said "that, in considering the language of any instruction, we should not be hypercritical but rather should be concerned primarily with its meaning to a jury of ordinarily intelligent laymen, crediting them with common sense and average understanding of the English language * * *." La Plant v. E. I. Dupont De Nemours & Co., Mo.App., 346 S.W.2d 231, 242–243.

Instruction No. 6 was not erroneous in the respect claimed. The assignment is overruled.

■ Appellant's only other assignment is that, "The court erred in giving Instruction No. 6 offered by defendant which submitted findings that defendant could not have seen plaintiff crossing the street, and that defendant could not have realized plaintiff was in a position where there was danger of collision because there was no evidence to support such findings and because said submissions were directly contrary to defendant's own testimony."

Before considering this assignment we must, in addition to the testimony of defendant heretofore stated, further review the defendant's evidence. Instruction No. 6 has been set out above and reference should be had again to the findings submitted therein.

In this case the defendant's testimony was somewhat conflicting and contradictory and it is necessary to review her testimony at some length. Defendant, testifying in her own behalf, testified that at the time in question she was driving the family automobile, a 1959 Studebaker large station wagon. The automobile was seven months old and was in good mechanical condition; there was nothing wrong with the horn, brakes or tires. She had her two children, ages fourteen and sixteen, seated with her in

the front seat. As she drove east down Ann Avenue at fifteen to twenty miles per hour there were other automobiles going west and the closest one had passed the place of her collision with plaintiff about "a car length" before the collision occurred. The first time defendant saw plaintiff she "was to the side of" a car parked on the north side of the street, about six feet from the north curbline.

Defendant further testified: "I happened to see these three little girls standing there, and a car went up the hill, and the one little girl run behind the car, and I only saw one little girl." She ran into the side of defendant's car. She did not run straight across the street but ran at an angle, running southeast, with her back partially to defendant. Plaintiff had been standing at the edge of the parked cars a little way out from the parked cars. Defendant did not have any judgment as to how close she was to where the accident happened at the time she saw the little girl running out into the street in front of her. When she saw the girl running, she applied her brakes as soon as she could and the left side of the automobile came in contact with the girl a little forward of the windshield. The car was not damaged, but the rear-vision mirror was broken off. Defendant also said that she applied her brakes about the same time the child hit her car. She stopped immediately and when she stopped her car, it threw the little girl back into the street to the left side of the door. After the collision, defendant applied her emergency brakes and parked, and by the time she got out of the car the girl had gotten up and run from the car over on to the sidewalk. The defendant got out of her car and ran after the plaintiff and brought her back and put her in the street in front of defendant's car. Defendant said: "I laid her down. * * * I gave her a blanket and laid Janet [plaintiff] down on the street and covered her up." It was a little while before the police came and took the child to the hospital.

Defendant's deposition had been taken on November 30, 1960, but she said that she was emotionally upset at that time since she had recently lost her father. Defendant further testified that she was watching closely as she drove east along Ann Avenue prior to the collision. Defendant admitted that she had previously testified that she didn't see any other children around the plaintiff at the time she first saw plaintiff, but she said she was mistaken. She testified that she now knows there were three little girls together. At the time defendant first saw plaintiff, she was not running, she was standing with the others next to the parked car right behind a car. Traffic was moving west on Ann Avenue at that time and defendant did not think the child was in any danger. Defendant admitted that she had said in her deposition that she did not honk her horn at any time throughout the occurrence. Defendant said she did not recall honking her horn at any time. She admitted that she had testified that she had continued to watch the child from the time she first saw her until the accident occurred, and that the child continued to run in the same course and direction she had been traveling.

The depositions had been taken nine months after the collision and almost three years had passed before the trial, but defendant refused to agree that her memory would have been more accurate at the time the depositions were taken than at the time of the trial. She again said that she continued watching the child from the time she first saw her and that she didn't know what direction the child was looking when defendant first saw her. Defendant admitted that when her deposition was taken she had said the child was looking in the direction she was running, and that she ran into the side of defendant's car. Defendant also said that her car moved forward from the place of the collision; that the child was not looking at her (defendant) when she first saw the child; that at the time of the trial she had no recollection of the child

ever looking in her direction as the child ran southeast, angling away from defendant's automobile; and that at the first moment she saw the child she did not realize there was any danger of an accident occurring. Defendant admitted that her previous testimony was that at the time she first saw the child she at that time had realized there was danger of an accident occurring. When cross-examined further defendant admitted that she probably did realize the danger of an accident occurring the first time she "laid eyes on the child." Defendant also testified that she knew the child was running when she first saw her. Later defendant said that she did not desire to change her testimony that the child was running when she first saw her and that the child was not standing still as she had previously testified. Defendant also testified that at the time she saw the child and realized the danger of collision with the child defendant's car was fifteen or twenty feet from the path of the child or from the point where the accident happened. She said that her automobile was then traveling between fifteen and twenty miles per hour and, at a speed of twenty miles per hour, she could stop her car in fifteen feet. At fifteen miles per hour she thought she could stop in twelve to thirteen feet and that she did immediately stop her car by slamming on her brakes at the time she saw the child running. Defendant also admitted that she had previously said with reference to slackening the speed of her car, that "it was a normal slowing." Defendant admitted that she had made the above statements, but claimed at the trial she was mistaken or could have been mistaken. At the trial she said she made an emergency stop and that no normal slowing was involved. Defendant also said that by reason of the cars going up the hill to the west she couldn't watch the child all of the time; that the traffic interfered with her view of the child, so that she was not correct when she had previously said that she didn't take her eyes off of the child from the first time she saw her up until the accident happened. She

later admitted that these cars going west had all passed her car before the accident happened. Defendant denied that she had told her attorney that the child ran in front of her car, but admitted that the child was thrown by the impact of her car; and that she was thrown up in front of defendant, a little up in front of the hood. Again, defendant said that her car did not run into the child; that the collision was not exactly with the side of the car; that it was in front of the windshield, not directly on the side of the car, but on the side of the windshield. She also said that the "child ran into the engine a little ahead of the windshield with sufficient violence to go up on the fender or engine or hood and back." Defendant said that when she stopped her car, plaintiff fell back into the street and jumped up immediately and ran around the side of the car and on to the sidewalk and that she (defendant) had to use some force getting her back. Defendant was not aware of any of plaintiff's injuries or of any broken bones, but insisted that the child had said she wasn't hurt and kept trying to get away.

Defendant also offered testimony confirming the fact that her car laid down a total of thirty-two feet and seven inches of skid marks; and that at a speed of twenty miles per hour and reaction time the stopping distance of this car on the downgrade was forty-two feet.

Respondent contends that defendant's evidence "conclusively showed that she could not have stopped her automobile or sounded her horn in time to avoid the collision." She further insists that Instruction No. 6 is a true converse instruction that needed no evidence to support it, but says "there was ample and abundant evidence that defendant did not have time to stop her car or blow her horn before the plaintiff darted into the side of her automobile." Respondent further states that "Under defendant's version of the accident, there would be no possible way for her to avoid a running child while defendant was going at a speed of 20 miles per hour and only

had 15–20 feet in which to stop her car." Respondent further claims that "defendant had no judgment of stopping distances" and reliance is placed in defendant's expert witness who testified on behalf of the defendant that, at a speed of fifteen to twenty miles per hour under the conditions prevailing at the time of the collision it would not have been possible to stop in fifteen feet, as testified to by defendant, and that, the emergency stopping distance at twenty miles per hour under the conditions prevailing at the time of collision was forty-two feet.

In support of Instruction No. 6 respondent discounts her own testimony as to speed and stopping distances, since they were mere estimates, and instead she relies upon the testimony of her expert witness as to stopping distances under the circumstances shown. She relies upon her own testimony to prove the existence of westbound traffic which interfered with her view and to prove the fact that the child ran out *from behind a westbound car* as it passed defendant's car.

■■■ Directing our attention again to Instruction No. 6, instructions must be supported by evidence and a party may not submit a finding based upon the testimony of the opposing party's witnesses where such testimony is directly contrary to and contradictory of his own personal testimony and his own theory of the case. West v. St. Louis-San Francisco Ry. Co., Mo.Sup., 295 S.W.2d 48, 53. A party is entitled to submit instructions based upon evidence which favors his theory of the case, notwithstanding that such evidence may be in direct conflict with evidence offered by the opposing party. Highfill v. Brown, Mo.Sup., 340 S.W.2d 656, 661 [6, 7]. A party is bound by his own testimony unless corrected or explained. Taylor v. Vestal, Mo.Sup., 304 S.W.2d 820, 823 [1, 2]. However, in determing whether a defendant's instruction is supported by evidence, we must consider the evidence in a light most favorable to

defendant. Rothe v. Hull, 352 Mo. 926, 180 S.W.2d 7, 8 [1–3]; Emert v. St. Louis Public Service Co., Mo.Sup., 370 S.W.2d 366, 368 [3]; Edwards v. St. Louis Public Service Co., Mo.Sup., 365 S.W.2d 483, 486 [2–4]; Thayer v. Sommer, Mo.Sup., 356 S.W.2d 72, 77 [5]. Further, where the defendant submits an affirmative finding of facts, the existence of which would disprove an essential fact of plaintiff's case, that submission must have factual support in the testimony. Sutton v. Fox Missouri Theatre Co., Mo.Sup., 356 S.W.2d 41, 49; Hart v. Midkiff, Mo.Sup., 321 S.W.2d 500, 508 [10]; Southwestern Bell Telephone Co. v. Chester A. Dean Const. Co., Mo.Sup., 370 S.W.2d 270, 277 [6]. We think Instruction No. 6 was sufficiently supported by evidence.

The credibility, weight and value of defendant's personal testimony and that of all other witnesses was for the jury in this case since we have reached the conclusion that, the conflicts and contradictions in respondent's personal testimony was not sufficient for us to rule, as an issue of law, that said testimony was wholly insufficient to support the instruction. Considering all of the evidence in the record, we find it sufficient to support the fact issues submitted in Instruction No. 6, and particularly to support that portion of Instruction No. 6 to the effect that defendant in the exercise of ordinary care could not have seen and realized plaintiff was in a position where there was danger of collision between plaintiff and defendant's automobile *in time* for defendant to have stopped her car or to have sounded a timely and effective warning of the approach of defendant's automobile, "and thus and thereby to have avoided the impact between plaintiff and defendant's automobile." It follows that, appellant's second assignment of error as to the giving of Instruction 6 must be and is overruled.

The judgment for defendant is affirmed.

All concur.