ROSARIO FUSCO, an infant by his next friend, Francesco Fusco, Plaintiff, v. AUGUSTIN J. DAUPHIN, JR., et al., Defendants.

(*May* 2, 1952.)

LAYTON, J., sitting.

*Joseph A. L. Errigo* and *John M. Bader* for Plaintiff.

*William Prickett* for Defendants.

Superior Court for New Castle County, No. 571, Civil Action, 1950.

LAYTON, J.:

This was an accident case. At the conclusion of plaintiff's evidence, I directed a nonsuit. A motion for new trial was filed and argued.

Because the defendant was not obliged to put in his defense, we are limited to the following meager facts established by plaintiff.

Plaintiff was riding as a passenger on a motorcycle driven by one Farone. Both Farone and plaintiff were minors, the former having no driver's license. Farone was operating his machine south on Union Street in the City of Wilmington. The only evidence of his speed is that it was from fifteen to twenty miles per hour. At the intersection of Third Street with Union Street, the motorcycle was struck by defendant's truck proceeding west on Third Street. There was a stop sign against defendant at this intersection. There is no evidence that defendant did not stop at this stop sign. The point of impact was several feet to the right of the imaginary center line of Union Street in the intersection. Neither plaintiff nor Farone saw defendant's truck until a split second prior to the collision. Union Street is forty feet wide and Third Street but twenty at that point.

Upon these facts, defendant moved for a nonsuit. I granted the motion upon the ground that plaintiff had failed to make out a *prima facie* case of negligence. Plaintiff has moved for a new trial upon the theory that I erred in holding that the circumstances were not such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts.

Plaintiff charged defendant with two specific acts of negligence, viz.: Failure to keep a proper lookout and with violating Section 602 of the Ordinances of the City of Wilmington which provides:

"The driver of a vehicle or coach who has stopped or slowed down as required by these Rules and Regulations at the intersection with a 'Boulevard' or 'Through Traffic' street, or in obedience to a 'stop' or 'slow' sign at any intersection, shall yield to other vehicles and coaches within the intersection or approaching so closely in the intersecting street as to constitute an immediate hazard, but said driver

having so yielded may proceed, and other vehicles and coaches approaching the intersection on the intersecting street shall yield to the vehicle or coach so proceeding onto or crossing the intersecting street."

■ Whether or not a plaintiff has established a *prima facie* case for a jury is, in a close case like this, frequently difficult to determine. Courts are more inclined in cases of doubt to send the case to the jury. *Volume 65, C. J. S., Negligence,* § 243, says this:

"Direct or positive evidence is not, however, necessary, but defendant's neligence may be established by indirect or circumstantial evidence and by the proof of facts from which negligence may reasonably be inferred, or, as stated by other authorities on the question, satisfying reasonable minds thereof. The determination of whether negligence may reasonably be inferred from the evidence depends on the particular facts of each case. While no particular fact or circumstance proved may establish or warrant the inference of negligence, when all of the facts and circumstances are considered as a whole, a reasonable inference of negligence may be drawn.

"The facts from which the inference of negligence may be drawn must be proved and cannot themselves be inferred or presumed.

"The negligence of defendant must be established with reasonable certainty. The facts must be of such a nature and so related to each other that the inference contended for is the more probable or reasonable to be drawn therefrom. An inference of negligence may not be based on mere surmise, conjecture, guess, speculation, or probability.

\* \* \* \* \* \*

"*Prima facie* case or presumption of negligence. Plaintiff is not bound to prove more than enough to raise a fair presumption of negligence on the part of defendant and of

resulting injury to himself, and, having done this, he is entitled to recover unless defendant produces evidence sufficient to rebut the presumption. Under some circumstances slight proof is sufficient to raise a presumption of negligence and to cast the burden on the other party to explain. Where the circumstances are such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a *prima facie* case of negligence is made. A *prima facie* case is made out whenever the evidence is sufficient to justify, although not strong enough to compel, an inference of negligence."

Compare *Queen Anne's R. Co. v. Reed,* 5 *Penn.* 226, 59 *A.* 860; *Szymanski v. Blumenthal,* 4 *Penn.* 511, 56 *A.* 674, 675. Yet these are but general expressions of the rule and each case must be decided upon its own facts.

Defendant contends principally that inasmuch as there is no evidence establishing the actual position of the motorcycle in relation to the intersection in question when defendant entered the intersection, the question of defendant's negligence is left in such doubt as to be based upon mere speculation or conjecture. To the contrary, plaintiff asserts that he has established certain basic facts from which a reasonable inference as to defendant's negligence may be drawn. I must, of course, view plaintiff's evidence in a light most favorable to his case for the purposes of this decision. It should be remembered also that Farone's clear contributory negligence in failing to see defendant's truck is not necessarily imputable to plaintiff.

We know that as he approached the intersection, Farone was going at a speed of from fifteen to twenty miles per hour. Whether or not defendant actually stopped at the stop sign is not of much importance here for, assuming as we must that he did, the duty still remained on him not to proceed out into the intersection if other vehicles were then within the intersection or approaching so closely along the intersecting street as to constitute an immediate hazard.

What constitutes an "immediate hazard" necessarily calls for a construction of § 602 of the City Ordinances. In this connection, also, the true meaning of the word "yield", in the third line from the end of the ordinance, must be considered. The average driver will no doubt say that a stop sign is erected as a warning against danger. But to a greater or lesser degree, most intersections in a city are dangerous because buildings frequently extend down to the sidewalk line on all four corners. I suggest that a stop sign reflects additional considerations than those of danger alone. These signs are erected by the city as part of an overall traffic pattern. The sign may reflect the view of the traffic authorities that the traffic on the favored street is much heavier at that point than on the disfavored street. Or again, it may be motivated by a desire to have traffic on the favored street move relatively free of interruption along the whole course of the favored street, regardless of the fact that, at a particular intersection, the traffic on the disfavored street is as heavy or even heavier than on the favored street.[1]

The driver approaching the stop sign must, of course, stop. He is in a position to observe oncoming traffic and judge its speed and to determine the approximate distance and time it would take him to cross safely. At a proper moment, when oncoming traffic does not create an "immediate hazard", he may proceed out into the intersection and force opposing traffic to "yield". Now, the word "yield" carries with it the connotation of giving way to the extent even of a complete stop. But so to construe the word in the light of the practical purposes sought to be accomplished by this ordinance would be completely unrealistic. Such a construction would (1) conflict with a sensible interpretation of the words "immediate hazard" because if the driver on the favored street must stop or slow down sharply to avoid collision with the disfavored driver, the latter constitutes an "immediate hazard" from a common sense point of view; (2) create confusion in the public mind because, in my judg-

---

[1]The intersection at Eighth and Washington Streets in this city is an example of this latter alternative.

ment, the average careful and reasonable operator feels that he must emerge from a stop sign with a high degree of caution. Otherwise, the likelihood of accident between the disfavored and favored vehicles would be increased and additional danger would arise from the possibility of rear end collisions between the favored driver and following traffic; (3) seriously disrupt the orderly flow of traffic in the favored street and in many cases defeat the general intent and purpose of the traffic authorities that traffic on the favored street should move along relatively free of interruption.

With these considerations in mind, I conclude that a realistic construction of § 602 compels this result. An "immediate hazard" is created when a vehicle approaches an intersection on a favored street at a reasonable speed under such circumstances that, if the disfavored operator proceeds into the intersection, it forces the former sharply and suddenly to check his progress or to come to a halt in order to avoid collision.

Let us now return to the facts of the case at bar. The accident happened very near the center of the intersection. The evidence is that defendant's truck struck the motorcycle which, insofar as the testimony discloses, was proceeding at a reasonable speed. Under such circumstances, it seems to me that the facts create the reasonable inference that defendant proceeded out into the intersection at a time when Farone's machine was so close thereto as to constitute an "immediate hazard". Of course, Union Street is twice as wide as Third Street so that defendant had to go twice as far to reach the middle of the intersection. The presumption that defendant entered into the intersection first could thus well be indulged in. But the same reasons which impelled the interpretation of the ordinance just made, preclude the argument that the disfavored driver automatically gains the right of way by getting into the intersection first. The ordinance should not be so construed at to invite a race. Under all the circumstances, there is a reasonable inference that if Farone had seen the defendant's truck, he would, at the very least have had to slow down sharply to avoid collision.

Little need be said on the question of plaintiff's charge that defendant failed to maintain a lookout. In my opinion, sufficient facts appear in the record to establish the reasonable inference that defendant also failed in his duty to keep a proper lookout. The case should have gone to the jury on this issue also.

Motion for new trial granted.