Louise M. SCOTT, Appellant,

v.

Howard GRAY, Respondent.

No. 47779.

Supreme Court of Missouri,
Division No. 1.

July 11, 1960.

Roy Coyne, Joplin, for appellant.

Robert E. Seiler, Joplin, for respondent,
Seiler, Blanchard & Van Fleet, Joplin, of
counsel.

DALTON, Judge.

Action for $51,000 for personal injuries and property damages alleged to have been sustained by plaintiff when an automobile operated by defendant collided with an automobile operated by plaintiff in a street intersection in Joplin, Missouri. Verdict and judgment were for defendant and plaintiff has appealed.

The collision occurred about 5 p. m., May 22, 1957, as defendant was driving east on Second Street and plaintiff was driving north on Pearl Avenue, crossing Second Street, which is an east-west through street paved with brick. There are stop signs on each side of Second Street where Pearl Avenue crosses. Both streets are 40 feet wide from curb to curb. The next north-south street west of Pearl is Byers Avenue, which is 372 feet away, measured from center to center. An alley between Pearl Avenue and Byers Avenue is 190 feet west of Pearl Avenue. Plaintiff was driving her 1952 Ford automobile and defendant was driving a 1957 Oldsmobile, owned by one Wormington. It had rained recently and the pavement was wet. Second Street slopes east, down hill, at the place where Pearl Avenue crosses it.

Plaintiff, a member of the Jasper County Bar, was accompanied by Miss Helen Redding, also a member of the Jasper County Bar, by whom plaintiff was employed as a stenographer. As plaintiff was proceeding north on Pearl Avenue, she brought her automobile to a complete stop some three feet south of the stop sign for Second Street, which sign is located twelve feet south of the southeast corner of the intersection of Pearl Avenue and Second Street. There is a row of trees along the south curb line of Second Street west of the mentioned intersection and automobiles were parked at the south curb and, also, on the east and west sides of Pearl Avenue.

Plaintiff was driving in the second lane from the east side of Pearl Avenue. When she stopped, as stated, she looked west, but could see west on Second Street only about one fourth way to the alley on account of the cars and trees and because she was not "in the clear." She did not see any approaching traffic. Her companion, Miss Redding, testified that when the car started up, she (Miss Redding) could see to the west "just about to the alley" and did not see any traffic approaching from the west on Second Street. Plaintiff had crossed the intersection many times and knew that Second Street was a through street, a protected stop street; and that about 5 p. m. was a busy time of day on account of going-home traffic. Plaintiff started forward slowly, in low gear. She continued to look for traffic on Second Street and her view improved as she moved forward. When she was even with the sidewalk on the south side of Second Street and the front of her car was at the curb line she could see west on Second Street to the alley, but did not see anything coming and she was still in low gear, traveling about 5 miles per hour. When she got out into the street, she could see to the next intersection to the west. She did not see anything approaching from the west. She was still going about 5 miles per hour when the collision occurred near the center of the intersection. Defendant's automobile struck the left door of plaintiff's car and plaintiff sustained severe and permanent injuries and her automobile was damaged.

Plaintiff had driven automobiles for 30 to 40 years. Her car was in good operating condition, the brakes and tires were in good condition and at 5 miles per hour she could have stopped in a very short distance, 2 or 3 feet. Concerning defendant's car, she said she "never saw the car at all." If she had seen it she would not have driven out in front of the oncoming car. She would have stopped. Since she did not see the car she did not apply her brakes before or after the collision. She did not see anything except there was a flash and crash all at once. At the moment of impact half of her car was in the northeast quadrant of the intersection and the other half was in

the southeast quadrant and she was headed straight ahead still in low gear. Plaintiff did not know where defendant's automobile was when she was at the stop sign, or when she entered the intersection, or when she was half way between the south curb and the center of the intersection. When the accident happened she was not expecting it and still had her foot on the gas feed. She admitted that she had said in her deposition that parked cars and the trees on the south side of Second Street didn't interfere with her view to the west.

Immediately after the collision, plaintiff's car continued across Second Street, collided with the front of a car parked at the north curb and came to rest on the filling station property at the northeast corner of the intersection, "almost up to the pumps." A witness who heard the crash and came to the scene of the collision, saw two ladies one of whom he now recognized at the trial, and he heard a man who was standing on the north side of the larger car involved in the collision say: "To be quite frank about it, I did not see the car." Defendant's automobile came to rest near the center of the intersection "headed sort of northeast." There were two skid marks back of defendant's car. At the scene of the collision, the defendant told officer Don Riley that plaintiff pulled out in front of him and he saw the car "almost on impact" and did not have time to do anything.

Defendant's testimony tended to show that he was Secretary-Treasurer and Manager of the Jobson Auto Body and Fender Works and he was returning to his shop after driving a customer home. At the time of the collision he was driving east at between 20 and 25 miles per hour. He was looking straight ahead and glanced to the right and left. He was driving on the right-hand side of Second Street in the lane next to the center of Second Street. He knew that Second Street was a through street, with stop signs at cross streets, including Pearl Avenue. When he first saw plaintiff's car, it was in motion, entering the intersection, accelerating, going north,

with the south line of Second Street about bisecting the car. He also said it "was past the south line of Second Street" when he first saw it. Defendant was then about 2 or 3 car lengths west of the west line of Pearl Avenue and was traveling 20 to 25 miles per hour. He also said he was 2 or 3 car lengths from plaintiff's car and the impact, driving 25 miles per hour, when he saw it. He estimated the length of his car at 18 feet. When he saw plaintiff's car, he applied his brakes as soon as he could react and he tried to swerve to the left to avoid the collision, but it was impossible to do so. The front of his car hit the left door of plaintiff's car. Plaintiff's car might have been a little south of the center line of Second Street when he hit it. He did not sound his horn and did not have time to do anything, except to apply his brakes and swerve to the extent he did. His tires slipped on the wet brick pavement and did not take hold like they should. He was not able to stop before the collision, but his brakes were set and his speed was reduced to between 10 and 15 miles per hour at the time of impact. His car did not move over 1 or 2 feet after the impact, but came to a stop with the left side slightly over the center line of Second Street and with the front end about one foot east of the center line of Pearl Avenue. (There was no evidence that plaintiff's car was ever west of the center line of Pearl Avenue.) The marks made by his tires were plainly visible for 10 to 12 feet west of the west line of Pearl Avenue. After he applied the brakes he could feel the car sliding. The brakes finally took hold, but just for an instant. Defendant estimated his stopping distance at a speed of 20 to 25 miles per hour at approximately 30 or 40 feet, after the brakes were applied.

Defendant denied the statements attributed to him after the collision and testified that he may have said he didn't see plaintiff's car before it was in motion. He further said he reacted as quick as he could and tried to avoid the collision but it was impossible to do so because, apparently,

plaintiff pulled out directly in front of him. There was nothing to prevent plaintiff from seeing the approach of his car. The right front light, right fender, the radiator grille and hood of defendant's car was damaged.

Defendant introduced in evidence portions of the Joplin Traffic Code, designating Second Street as a through street, defining a "through street," fixing the speed limit at 25 miles per hour and right-of-way, as follows: "Article VIII. Other Driving Regulations. Section 1. Right-of-way. (a) The driver of a vehicle approaching an intersection shall yield the right-of-way to a vehicle which has entered the intersection from a different roadway provided, however, there is no form of traffic control at such intersection. (b) The operator of a motor vehicle having stopped as required by this ordinance at the entrance to a through street or a stop intersection, shall yield the right-of-way to other vehicles which have entered said intersection from said through street, or which are approaching so closely on said through street as to constitute an immediate hazard."

The appellant contends that "the verdict of the jury is and was against the greater weight of the evidence, and all of the evidence, and that the verdict was for the wrong party and could not have been arrived at [by] any proper consideration of the evidence." Respondent, on the other hand, contends that plaintiff was guilty of contributory negligence as a matter of law; that no case was made for a jury, and the errors complained of are immaterial. O'Dell v. Dean, 356 Mo. 861, 204 S.W.2d 248, 249. We have decided to rule appellant's assignments.

Appellant's theory is that defendant's own testimony shows that plaintiff entered the intersection first, while defendant was some 36 to 54 feet to the west; that defendant "saw the nose of plaintiff's car" so entering the intersection, although "the plaintiff did not see the defendant at any time until immediately before the crash"; and that defendant, even though on a through street, could have stopped his car and have avoided the collision and injury to plaintiff.

█ If defendant was driving at 20 to 25 miles per hour he was moving at 29.33 to 36.66 feet per second. Assuming a normal reaction time of three fourths of a second, defendant would have moved from 25 to 27½ feet before he could have applied his brakes. In any event, defendant's estimates of speed and distance were for the jury, as was his estimate of stopping distance, the question of plaintiff's contributory negligence was involved and there was no contention by plaintiff in the trial court that plaintiff was entitled to judgment as a matter of law on defendant's evidence.

█ Further, "a verdict for defendant on plaintiff's claim needs no supporting evidence. * * * The party denying liability need not introduce any evidence to support a verdict" in his favor. Clemons v. Becker, Mo.Sup., 283 S.W.2d 449, 451. In the case of Bloch v. Kinder, 338 Mo. 1099, 93 S.W.2d 932, 933, the court said: "The burden was on plaintiff to show, prima facie, that defendant was guilty of the negligence charged. The absence of such a showing by plaintiff would authorize a verdict for defendant. Moreover, if, as plaintiff contends, his evidence tended to show that defendant was guilty of the negligence charged, the credibility of such evidence and the weight and value which should be given to it was a question for the jury. Since the verdict was in favor of defendant and received the approval of the trial court, we cannot set it aside as being against the weight of the evidence, because an appellate court is not authorized to pass upon the weight of the evidence." And see Dixon v. Edelen, Mo. Sup., 300 S.W.2d 469, 472; Helton v. Huckeba, 365 Mo. 93, 276 S.W.2d 78, 79; Siegel v. Ellis, Mo.Sup., 288 S.W.2d 932, 934; Thompson v. Healzer Cartage Co., Mo. Sup., 287 S.W.2d 791, 792. Appellant cites Ritzheimer v. Marshall, Mo.App., 168 S.W. 2d 159 which does not support her assign-

ment. In that case the trial court granted a new trial on the ground that the verdict was against the weight of the evidence. The jury in this case having found the issues against plaintiff-appellant and for the defendant and the verdict having had the approval of the trial court, we may not interfere on any of the grounds stated in the above assignment. The assignment is overruled.

■■■ Appellant contends the court erred in giving Instruction No. 11 for defendant for the reason that said instruction is confusing and misleading and for the further reason that said instruction failed to instruct the jury "what an immediate hazard might be." The first part of the instruction reads as follows:

"The Court instructs the jury that merely because plaintiff entered the intersection first, if so, would not give the plaintiff the right of way if you find from the evidence that when plaintiff entered said intersection the defendant was approaching so closely on Second Street as to constitute an immediate hazard, and if you find from the evidence that plaintiff entered said intersection when defendant was approaching so closely on Second Street as to constitute an immediate hazard, and if you further find that in so doing plaintiff failed to exercise the highest degree of care and was thereby negligent and that such negligence directly contributed to cause the collision * * *."

Appellant does not point out wherein or why the instruction is confusing and misleading. The statement by appellant of a mere conclusion without any development of the point presents nothing for review. Even the printed argument fails to point out wherein or why the instruction is confusing and misleading. Appellant also contends that the instruction does not state the speed at which plaintiff was traveling; that it does not state how far the defendant was from the intersection when the plain-

tiff first entered the intersection; that it does not fix the speed of defendant's car, nor submit the atmospheric conditions, the lighting, or natural hazards such as hills or curves, but simply says: "approaching so closely on Second Street as to constitute an immediate hazard"; and that the instruction does not define "immediate hazard" as "an immediate hazard of a collision," nor completely set out the duties of either plaintiff or defendant. We find no merit in these contentions. There was little conflict in the evidence in this case, and none as to the speed of either plaintiff's or defendant's automobile. Where there is no conflict in the evidence, and the question is only as to the conclusion to be drawn, the submission of the detailed facts is not required. See Knight v. Richey, 363 Mo. 293, 250 S. W.2d 972, 977. Under the circumstances shown by the record, we think it unnecessary to have defined the term "immediate hazard" or to have added the words "of collision." We think a jury would well understand the instruction without further explanation or definition. The term "immediate hazard" also appears in Section 304.021, subds. 3 and 4 RSMo, V.A.M.S.; Laws 1953, p. 587. And see Pitts v. Garner, Mo.Sup., 321 S.W.2d 509, 519.

Appellant cites Brown v. Clancy, Dist. of Columbia, D.C.Mun.App., 43 A.2d 296, 298; Fisher v. Wichita Transp. Corporation, 156 Kan. 500, 134 P.2d 393, 396; Fusco v. Dauphin, 8 Terry, Del., 140, 88 A.2d 813, 816 and Bohnen v. Gorr, 234 Minn. 71, 47 N.W.2d 459, 462. None of these cases aid the appellant's case on this appeal, although the question of "immediate hazard" was mentioned or considered in these opinions. The opinion in the Brown case [43 A.2d 296, 298] defines the term "immediate hazard" as meaning "a vehicle so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the same time." The Fusco case [88 A.2d 813, 816] says: "An 'immediate hazard' is created when a vehi-

cle approaches an intersection on a favored street at a reasonable speed under such circumstances that, if the disfavored operator proceeds into the intersection, it forces the former sharply and suddenly to check his progress or to come to a halt in order to avoid collision." We think it was unnecessary to so advise the jury by an instruction in the present case. The assignment is overruled.

■ Appellant further contends that "the court erred in giving Instruction No. 12 for defendant." The assignment presents nothing for review, since it does not set out wherein and why the instruction is claimed to be erroneous. Supreme Court Rule 1.08(a) (3) and (d), now designated as 83.05(a) (3) and (e), V.A.M.R. In argument appellant says that "the instruction does not properly state the law under the evidence and * * * said instruction is confusing and misleading." Appellant does not state wherein and why the instruction fails to state the law under the evidence or why it is confusing and misleading. The general statement of these conclusions presents nothing for review. Appellant also says the instruction is erroneous "for the further reason that the instruction states 'on which was approaching so closely on Second Street as to constitute an immediate hazard.'" Subsequently, appellant says that: "No definition is given of 'immediate hazard'"; that there should be added the words "the hazard of collision"; and that the instruction "leaves the jury to conjecture and guess and at no place does it determine what constitutes and 'immediate hazard.'" We have ruled this matter in connection with the prior instruction.

Appellant further contends that, "the Court erred in refusing plaintiff's Instructions No. 18 and No. 19, which instructions were set out in detail in Varley v. Columbia Taxicab Company, 240 S.W. [218], loc. cit. 223, and which should have been given on behalf of plaintiff." The assignment presents nothing for review because it does not point out wherein or why it was error to refuse to give these instructions *in this case*. The alleged error is not even referred to or developed in the printed argument and the instructions are not set out in the brief or any error in their refusal attempted to be shown.

■ Appellant further contends that, "the Court erred in giving Instruction No. 17 for the defendant for the reason that said instruction does not properly state the law under the evidence in this case, and defendant's instruction has gone beyond the plaintiff's petition in asking the jury not to arrive at any damages for any disability existing in plaintiff prior to May 22, 1957. The petition at no time asks for any damages for any disability which did not occur in the accident of May 22, 1957." The assignment does not point out wherein or why the instruction does not properly state the law under the evidence in this case in directing that the jury not give plaintiff any damages for any disability existing prior to May 22, 1957, where the petition only asked damages for disability resulting from an injury sustained on May 22, 1957. No authorities are cited. In any case, since it appears that the jury found against the plaintiff on the issue of liability and did not reach the issue of damages, it is apparent that plaintiff could not have been prejudiced by the giving of the instruction even if it was erroneous. Dryden v. St. Louis Pub. Service Co., Mo.Sup., 264 S.W.2d 329, 332 (3); LeGrand v. U-Drive It Co., Mo.Sup., 247 S.W.2d 706, 713(9, 10). The assignment is overruled.

While plaintiff submitted her cause against the defendant on numerous assignments of primary negligence, such as excessive speed under the circumstances, failure to check the speed of his automobile on approaching Pearl Avenue, failing to warn of his approach and permitting his car to collide with plaintiff's automobile in the intersection, it is apparent from the record that the cause probably turned upon the issue of plaintiff's contributory negli-

**44**

gence. In any event, after a careful review of the entire record and all assignments of error, we find no prejudicial error authorizing a new trial.

The judgment is affirmed.

All concur.