**Austin EMERT, Appellant,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY,**
a Corporation, Respondent.

No. 49561.

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1963.

William M. Londoff, St. Louis, Jane M. Aguirre, St. Louis, on the brief, for appellant.

Vernon Riehl, St. Louis, for defendant (respondent).

DALTON, Presiding Judge.

Action for $25,000 damages for personal injuries alleged to have been sustained by reason of defendant's negligence, when defendant's streetcar collided with the rear of plaintiff's automobile. Defendant filed and submitted a counterclaim for $399.02 for property damage sustained in the collision, when the right front doors of the streetcar were torn off by the rear bumper of plaintiff's automobile. Verdict and judgment were for defendant on plaintiff's claim and for plaintiff on defendant's counterclaim. Only the plaintiff has appealed.

Plaintiff charged in his petition and by Instruction No. 1 submitted a finding that plaintiff's said automobile, at a certain time and place, was stopped on or near the south rail of the eastbound streetcar tracks; that plaintiff's said automobile had been so stopped for approximately ten to twelve seconds; that at said time defendant's eastbound streetcar, operated by one of its employees to the rear of plaintiff's automobile, was negligently and carelessly caused to overtake, run into and collide with the rear-end of plaintiff's automobile; and that plaintiff was injured thereby.

By defendant's Instruction No. 2 defendant submitted the plaintiff's alleged contributory negligence in the operation of his automobile in that "plaintiff's automobile overtook and passed [to the right of]

the front end of said moving streetcar and that, immediately thereafter, plaintiff suddenly turned his automobile to the left and onto the eastbound streetcar tracks and brought said automobile to a sudden stop directly in the path of and in close and dangerous proximity to said moving eastbound streetcar, without giving a timely and adequate warning of his intention to stop * * *."

■ Appellant has assigned error on the action of the trial court in overruling plaintiff's motion for a directed verdict in plaintiff's favor on the issue of defendant's liability "for the reason that there was a complete lack of probative evidence to support the jury verdict in favor of defendant on plaintiff's cause of action, and [that] such verdict was based upon speculation and conjecture."

At the close of all the evidence plaintiff asked the court to direct a verdict in his favor and against the defendant on the issue of liability, "and as grounds therefor, states that defendant's own evidence shows that defendant's operator was guilty of negligence in the operation of the streetcar on the occasion in question, which negligence directly and proximately caused the collision and injuries mentioned in the evidence."

Plaintiff's counsel also orally asked "the Court to instruct the jury that their finding with reference to the issue of negligence on the defendant should be in favor of the plaintiff in view of the evidence and the law." Both motions were overruled.

In this court appellant argues "that, under all of the circumstances, there was a complete lack of probative evidence to support the verdict in favor of defendant; that the trial court erred in overruling plaintiff's motion for directed verdict on the issue of liability; that the verdict of the jury could only be, and was, based solely upon speculation and conjecture, and that by reason thereof the trial court committed reversible error in overruling plaintiff's motion for new trial."

Appellant cites eight cases in support of the alleged error in overruling the plaintiff's motion for a directed verdict. In none of the cases cited was a verdict directed in favor of plaintiff and in none of them was the procedure here sought authorized. The assignment is based upon a misunderstanding as to the applicable law, and we find no merit in the assignment.

■ In Bloch v. Kinder, 338 Mo. 1099, 93 S.W.2d 932, the court said: "* * * in a case of this character, a verdict for defendant need not be supported by affirmative, substantial evidence tending to show that defendant was not guilty of negligence, because the burden was not on defendant to acquit himself of the charge of negligence. The burden was on plaintiff to show, prima facie, that defendant was guilty of the negligence charged. The absence of such a showing by plaintiff would authorize a verdict for defendant." And see Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558, 559[1–3]; Dixon v. Edelen, Mo.Sup., 300 S.W.2d 469, 472[1–3]; J. D. Streett & Co. v. Bone, Mo.Sup., 334 S.W.2d 5, 10[7]; Tonkins v. Monarch Bldg. Materials Corp., Mo.Sup., 347 S.W.2d 152, 157[5–7]; Scott v. Gray, Mo.Sup., 337 S.W.2d 38, 41[2, 3]. Nor do the facts in evidence in this case, as hereinafter stated, bring it within the exceptions to the general rule as stated in Rogers v. Thompson, 364 Mo. 605, 265 S.W. 2d 282, 287[1]; and Daly v. Schaefer, Mo. App., 331 S.W.2d 150, 154.

Appellant further contends that Instructions No. 2, 3 and 4, given at defendant's request, "hypothesized findings which were not supported by substantial credible evidence, and thereby said instructions permitted a finding and verdict for defendant based on speculation and conjecture."

■ Since the issues in the trial court were found for defendant on plaintiff's claim, we shall review the evidence most favorable to defendant and disregard the unfavorable evidence. See Conley v. Crown Coach Co., 348 Mo. 1243, 159 S.W. 2d 281, 283[1–3]. The same rule applies

when determining whether defendant's instructions are supported by evidence. In Rothe v. Hull, 352 Mo. 926, 180 S.W.2d 7, 9, the court said: "The rule is that we may consider only the evidence most favorable to a defendant recovering a verdict in determining whether an instruction given at defendant's request is unsupported by evidence. Moffett Bros. & Andrews Commission Co. v. Kent, Mo.Sup., 5 S.W.2d 395, 402; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 570; Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13, 17. It is immaterial whether the issue is presented by plaintiff on appeal from a judgment entered on the verdict for defendant, or on an appeal by a defendant from an order of the trial court granting a new trial on the ground that defendant's instruction is unsupported by the evidence." And see Highfill v. Brown, Mo.Sup., 340 S.W.2d 656, 661; Thayer v. Sommer, Mo. Sup., 356 S.W.2d 72, 77[5]; Hopper v. Conrow, Mo.Sup., 347 S.W.2d 896, 899 [1–3]; Palmer v. Lasswell, Mo.Sup., 287 S.W.2d 822, 827[2–4].

The evidence favorable to defendant tended to show that at about 12:30 p.m., August 20, 1960, Joseph Hagen, one of defendant's employees, was operating a streetcar in an eastwardly direction on Easton Avenue in the City of St. Louis; that, when the streetcar reached the west side of Kingshighway, and was loading and unloading passengers, the traffic signal was red for eastbound traffic; that immediately to the right of defendant's streetcar at that time there was a Mercury automobile and behind it there was a Chrysler automobile; that both were headed east, and their operators were awaiting the traffic light change; that, when the light turned green, Hagen moved the streetcar forward and when it reached the center of Kingshighway its speed was approximately seven miles per hour; that the Mercury automobile moved at a faster rate of speed across and beyond the intersection; that, when the front of the streetcar had reached the east curbline of Kingshighway its rate of speed had been reduced to about five miles per hour, since the Mercury automobile, then some forty feet to the east, was slowing down; that the Mercury automobile was slowing to a stop on account of traffic ahead entering or leaving the Sears-Roebuck & Company's premises by way of a twenty-five foot entranceway on the south side of Easton Avenue, and located some forty feet east of the east side of Kingshighway; that Hagen had begun slowing the streetcar to maintain the same distance between the front of the streetcar and the rear of the Mercury; and that, at that time, plaintiff, who had been delayed by pedestrians, drove his Chrysler forward at some fifteen miles per hour and passed to the right of defendant's streetcar; that, as he passed the streetcar he swung his automobile over to the left and into the path of the streetcar, so that its left side was six to eight inches from the south rail, but the overhang of the streetcar was approximately one foot, and, when plaintiff then turned to the right, he did not clear the overhang of the streetcar. When the Mercury automobile came to a full stop by reason of the movement of traffic ahead, the plaintiff brought his Chrysler to a full stop some five or six feet behind the Mercury and within fifteen feet ahead of the moving streetcar; that plaintiff's said automobile was then angled somewhat to the right so that only the left rear portion was within the overhang of the streetcar; that, as stated, Hagen had also observed the Mercury coming to a stop; and that, since plaintiff's Chrysler behind the streetcar had apparently failed to get back out to the right and beyond the overhang of the streetcar, Hagen immediately put the streetcar brakes in emergency and the streetcar gong was sounded, but at five miles per hour the streetcar, weighing some 36,500 pounds, had a stopping distance of not less than twenty to twenty-five feet and, while the streetcar was not stopped, it was slowed to three miles per hour before it struck the left rear bumper of plaintiff's car, and the bumper slid

around the right front of the streetcar, as the streetcar went approximately six feet further before coming to a complete stop. The streetcar had brushed plaintiff's automobile so that the left rear bumper came in contact with the right front doors of the streetcar and knocked them off the channels.

Repeatedly Hagen testified that plaintiff's Chrysler, traveling at fifteen miles per hour, passed to the right of the streetcar and then came over in front of the overhang of the streetcar and then turned back to the right, but the Mercury came to a full stop ahead and the Chrysler did not clear the path of the streetcar as plaintiff stopped behind the Mercury. The taillight of the Chrysler was broken out and there was red paint from the streetcar on the automobile's left bumper where the bumper had been pushed by and around the right front of the streetcar and then moved back along the right side of the streetcar to throw the right front doors off their tracks. As to how long plaintiff's automobile had been stopped at the time of the collision, Hagen testified, "It could not have been very long because everything happened so fast. * * * Oh, around approximately five seconds." On further cross-examination Hagen said concerning the mentioned time, "I said about five seconds. Everything happened fast; I am grabbing for a figure, I don't know just exactly how long." Hagen further said, "I saw the car [Chrysler] coming around on my right. When I [Hagen] made the stop I am fighting to stop an eighteen-ton streetcar * * *." As to the plaintiff, the witness said, "He wasn't ahead of me he was coming in from my right in and back out * * *. I throwed it [the brakes] in emergency." At that time Hagen had seen the Mercury stopping and plaintiff's car turning to the right but not enough to clear the overhang of the streetcar, and that plaintiff was attempting to stop behind the Mercury. The streetcar was forty-eight feet in length and after the collision the front of the streetcar was then east of the east line of Kingshighway with the rear of the streetcar extending into Kingshighway just enough to interfere with traffic in one lane.

Hagen also testified that he was undertaking to keep approximately forty feet between the front of his streetcar and the Mercury car ahead; that the plaintiff's Chrysler, approximately eighteen feet long, swung to the left and then tried to get back to the right before stopping; that it did stop six to eight feet behind the Mercury, so that twenty-six to twenty-seven feet of the forty-foot space between the streetcar and the Mercury was suddenly occupied by plaintiff's car and Hagen had only thirteen or fourteen feet left in which to stop the streetcar at five miles per hour, but it could not be stopped in less than twenty to twenty-five feet. Hagen admitted that he had previously testified in a deposition taken in this case on January 16, 1961; that he had estimated that the Chrysler had stopped for "thirty seconds" before the streetcar struck it. He sought to explain this testimony by saying that plaintiff's counsel "was feeding me a lot of questions that day and I was grabbing for figures out of the air the best I could." He also said that when he saw the Mercury begin stopping on account of traffic ahead, which he thought was a vehicle coming out of the Sears-Roebuck place, that he had begun to slow the streetcar and that this was before plaintiff's car had been turned into the space between the streetcar and the Mercury, and plaintiff had then turned to the right and tried to get back out.

Defendant also offered further evidence tending to show that plaintiff had talked with Milburn Dunbar, Mobile Supervisor for defendant, when Dunbar arrived at the place of collision and before the streetcar had been moved. Dunbar testified: "I asked Mr. Emert how this happened, and he said the car in front of him stopped short, and he put on his brakes and he stopped, and he did not blame our operator, because he didn't have time to stop."

When Dunbar arrived, plaintiff got into his car and pulled it into the first driveway east of Kingshighway which was in front of the Sears Service Station on Easton. The driveway was twenty-five feet in width and began at a point about forty feet east from Kingshighway.

Plaintiff's testimony tended to show that, when west of Kingshighway, he had been stopped behind Mr. Charleston's Mercury about halfway back from the front of the streetcar, but after the traffic light changed to green the Mercury immediately moved forward, but plaintiff was delayed by pedestrians passing in front of him. However, when they were out of the way, he proceeded across Kingshighway at ten or fifteen miles per hour and moved in front of the streetcar. He testified that no part of his car ever crossed the south rail of the streetcar tracks and that he stopped with the left-hand side of his automobile one and one-half feet south of the south rail. As to his reasons for *swerving* to the left, he said: "I gradually swerved toward the left, because there was a lot of people standing on the curb, being Saturday afternoon, I was afraid someone would step down off the curb * * *." He further testified that he stopped six to eight feet behind the Mercury and that the streetcar proceeded across Kingshighway and struck the back of the Chrysler and knocked it into the Mercury ahead. While, as stated, plaintiff testified that he stopped his car eighteen inches from the south rail of the streetcar tracks, he nevertheless admitted, on cross-examination, that he drove his car around in front of the right side of the streetcar and stopped, where the streetcar, operated on its tracks, hit the back of his said automobile and knocked it into the Mercury ahead.

The driver of the Mercury, Vernon Charleston, was a witness for plaintiff and he testified that he stopped his automobile "two to three feet" south of the southernmost streetcar track, so that the streetcar would have passed his car without a collision. He stopped his car to permit a west-bound car to make a left turn into the Sears-Roebuck parking lot on the south side of Easton. "I don't know exactly where it came from, but it did make a left turn. * * * I stopped, I let him go on." The witness said that, when he saw the westbound automobile beginning to make a left turn into the Sears lot he concentrated for a second or two on stopping his own automobile clear of its path. Plaintiff also repeatedly said he pulled up "directly" behind the Mercury and "about eighteen inches from the south rail."

As stated, appellant contends that Instructions No. 2, 3 and 4, given at defendant's request, "hypothesized findings which were not supported by substantial credible evidence."

Appellant construes Instruction No. 2 as purporting to submit the defendant's affirmative defense of contributory negligence; Instruction No. 3 as purporting to submit facts necessary for a finding for defendant upon its counterclaim against the plaintiff; and Instruction No. 4 as "a sole cause" instruction hypothesizing findings of facts as testified to by Joseph Hagen, the operator of the streetcar. Respondent, however, says that Instruction No. 4 is an instruction setting out defendant's theory of the case with a submitted finding that the defendant was not negligent. Appellant insists that, "the incredible utterances of Joseph Hagen, in contravention of the laws of nature or physics, do not rise to the dignity of credible, probative evidence"; and that there was a total absence of other substantial evidence to support the findings of facts under Instructions No. 2, 3 and 4. Appellant also says that, absent such substantial evidence, the submission of such facts invited the jury into the field of speculation and conjecture; and that a finding based thereon should not be permitted to stand.

Each of these instructions contained and submitted a finding of facts substantially as follows: " * * * that at that time plaintiff's automobile overtook and passed the

front end of said moving streetcar and that immediately thereafter *plaintiff suddenly turned his automobile to the left* and onto the eastbound streetcar tracks and brought said automobile *to a sudden stop* directly in the path of and in close and dangerous proximity to said moving eastbound streetcar, *without giving a timely and adequate warning of his intention to stop.*" (Italics ours.)

Appellant complains that Instructions No. 2, 3 and 4 erroneously authorized a verdict for defendant upon a finding that plaintiff brought his vehicle to a *sudden stop,* when there was no evidence in the record to support a finding that plaintiff brought his vehicle to a "sudden" stop or to an "unexpected" stop. Under this assignment appellant reviews the testimony of Joseph Hagen with reference to plaintiff's automobile, as follows: "He pulled on in front, a little over, and started back out"; that, as the Mercury came to a stop plaintiff's Chrysler pulled in front of the streetcar. "A. Yes, sir, and back out. * * * He turned back to the right. * * * Q. Did he get entirely out of the path of your streetcar as he did that? A. No, sir."

Appellant then reviews Hagen's testimony with reference to the lapse of time after plaintiff had stopped his automobile and before the collision occurred, as follows: "It could not have been very long, because everything happened so fast. Q. Well, how long, if you have an opinion. A. Oh, around approximately five seconds." Appellant also reviews Hagen's testimony with reference to the movement of plaintiff's automobile when he stated, "He wasn't ahead of me, he was coming in from my right around and back out. * * * I throwed it in emergency." Appellant then points to Hagen's deposition testimony taken in January, 1961, wherein Hagen testified that the Chrysler was stopped "thirty seconds" before the streetcar collided with it. However, the plaintiff testified that his maximum speed in crossing Kingshighway was fifteen miles per hour; that the front of the Chrysler was fifteen feet back of the Mercury, when plaintiff reached the east side of Kingshighway; that the Mercury had been stopped something like five seconds before the plaintiff stopped behind it; and that plaintiff brought the Chrysler to a stop six to eight feet behind the Mercury. Plaintiff's witness Charleston said that plaintiff brought the Chrysler to a stop "half a car's length," or nine to ten feet behind the Mercury. There is no evidence that plaintiff could not have cleared the overhang of the streetcar if he had proceeded further with his right turn, or if he had moved closer to the Mercury. As to why he had not stopped "behind the other one," apparently a car to the right, plaintiff said, "I would have had to pull suddenly to the right."

█ Instruction No. 3, as stated, submitted a finding in favor of defendant on defendant's counterclaim. If this instruction was erroneous by reason of its submission of the matters herein complained of and if it was further erroneous by reason of its submission of a finding that plaintiff brought said automobile to a stop "with the left rear end of said automobile extending approximately one foot northwardly over the south rail of the said eastbound streetcar tracks," then the said error, if any, was favorable to plaintiff, imposed an undue burden on defendant and was not prejudicial to plaintiff since the jury found the issues in favor of plaintiff on defendant's counterclaim. However, the submission in the instruction, that the left rear portion of the automobile extended one foot northwardly over the south rail, amounted to no more than a statement that it was in the path of the streetcar and did not necessarily conflict with plaintiff's submission in Instruction No. 1, which submitted that plaintiff's automobile was stopped "on or near" the south rail of the eastbound tracks. The plaintiff was not prejudiced by the giving of Instruction No. 3.

Was there sufficient evidence in the record to support the giving of Instructions No. 2 and 4 on the issues submitted concerning plaintiff's *sudden* turn to the left

and his *sudden* turn to the right and the *sudden* stop? We think the evidence was entirely sufficient. Defendant's evidence tended to show that at the time the streetcar reached the east side of Kingshighway it was traveling five miles per hour; and that at the same time plaintiff's car was proceeding and passing the streetcar at fifteen miles per hour. The Chrysler passed the streetcar and came to a stop in its path and the streetcar stopped before it had cleared Kingshighway. It is apparent that the collision was not long delayed and that events necessarily happened in a very short space of time. Further, the evidence shows that plaintiff "swerved" his car first to the left and then to the right and then stopped short of the Mercury. Even plaintiff's use of the term "swerve" indicated movement from which the jury could infer an "abrupt shift of direction." See Webster's Third International Dictionary Unabridged. Also the term "cut in" has been defined as: "To thrust oneself usu. with abruptness or force into a position between others or belonging to another: to drive a vehicle rapidly to a place in a moving line of vehicles." The record also shows the use of terms such as "brushed by," "stopped short," "cut off," "cut in," "didn't have time to stop," "cut in front," "fighting to stop," "attempting to pass"; and that the westbound automobile on Easton Avenue made a left turn and caused the operator of the Mercury to "stop short" and let the left-turn vehicle proceed. The record favorable to defendant indicates a sudden stop by both the Mercury and the Chrysler. From all the circumstances shown in evidence the jury could well infer suddenness with reference to the matters submitted in the several instructions.

Nor was defendant concluded by Hagen's testimony as to the five seconds lapse of time or the thirty seconds lapse of time after plaintiff's car had stopped and before the collision occurred. The testimony as to lapse of time was a mere estimate of the witness, and there was other evidence in the record which tended to show the esti-

mates were clearly erroneous. The rule is that a party is not concluded by a witness' mere estimate of time, speed and distance, particularly where there is other evidence on the issue for the jury's consideration. Lay v. McGrane, Mo.Sup., 331 S.W.2d 592, 596[3–5]; Appelhans v. Goldman, Mo.Sup., 349 S.W.2d 204, 208[12]; McDonough v. St. Louis Public Service Co., Mo.Sup., 350 S.W.2d 739, 744[3]; Duffendack v. St. Louis Public Service Co., Mo.App., 365 S. W.2d 52, 53; Stout v. St. Louis County Transit Co., Mo.App., 285 S.W.2d 1, 4[1, 2].

Appellant further contends that "Instructions Nos. 2, 3 and 4 erroneously submitted plaintiff's failure to give timely and adequate warning *for the reasons that:* (1) Said instructions failed to hypothecate factual issues necessary to establish *plaintiff's duty to warn;* and (2) Under the evidence, any failure by plaintiff to give timely and adequate warning could not have been a proximate cause." (Italics ours.)

Appellant argues that the mentioned instructions "stressing plaintiff's failure to give an adequate and timely warning, without sufficiently hypothesizing a preliminary finding of facts necessary to give rise to a duty upon plaintiff to warn, were prejudicially erroneous in that the jury could have directed [sic] a verdict for defendant simply because plaintiff did not give a warning." Appellant also argues that, "An instruction authorizing the jury to return a verdict for a party must require the finding of all essential fact issues necessary to establish the legal proposition on which the right to verdict is based." Appellant further argues that Hagen's testimony clearly illustrates that he was at all times aware of the *movement of plaintiff's vehicle,* since he described the alleged movements with particularity. However, it was not the *movement* but the sudden *stop* that caused the trouble. Appellant further says that there was no evidence that a warning by plaintiff would have avoided the collision.

In considering this assignment we must keep in mind that Instruction No. 2 was a

contributory negligence instruction based upon plaintiff's conduct in suddenly moving his automobile into the path of the streetcar and suddenly stopping it there without giving warning of his intention to suddenly stop. Instruction No. 3 submitted defendant's counterclaim against plaintiff; and No. 4 submitted a finding that defendant was not negligent in the respects claimed in plaintiff's Instruction No. 1. That the plaintiff gave no timely and adequate warning of his intention to suddenly stop in the path of the streetcar is, in effect, conceded. Appellant's argument disregards the fact that Instruction 2, on contributory negligence, submitted a finding that plaintiff "knew, or in the exercise of the highest degree of care, should have known that in so operating said automobile in the respects set out above there was danger of a collision with said streetcar and that in so operating said automobile Austin Emert failed to exercise the highest degree of care and was negligent, and that such negligence, if any, directly caused or directly contributed to cause said collision, then, in that event, you must find the plaintiff was contributorily negligent and he cannot recover against the defendant under Instruction No. 1, and this is true even though you find that the defendant was negligent under said Instruction No. 1." The instruction properly submitted proximate cause to the jury.

Appellant further insists that Instructions 2, 3 and 4 on their face present a mixture of legal theories so inconsistent that, when given together, the effect was to confuse and mislead the jury. Under this point appellant says that Instruction 2, by its reference to Instruction 1, submitted two diametrically opposite conceptions of the facts. Apparently this contention is based on the fact that Instruction No. 2, submitting contributory negligence, properly provided that, if *both* plaintiff and defendant were negligent, plaintiff could not recover.

Appellant further insists that Instructions 2 and 4 submitted the position of plaintiff's sudden stop "as being in the path of the streetcar" and that Instruction No. 3 placed the left side of plaintiff's car as one foot north over the south rail. Of course, it is clear that, if plaintiff had not stopped his automobile within the path of the streetcar there could have been no collision. We find no conflict in the respect mentioned. Appellant further argues that Instruction 2 directed a verdict for defendant on the facts therein submitted, even though defendant was negligent under Instruction No. 1; that Instruction No. 4, directed a verdict for defendant provided defendant was not negligent under Instruction No. 1, and that these instructions were on their face so prejudicial, confusing and misleading that reasonable doubt arises as to their true meaning. We find no merit in these assignments. While these instructions may have been confusing to counsel, as counsel insists, we find nothing therein prejudicially erroneous. Nor do we believe they would confuse or mislead the jury to plaintiff's prejudice. The factual situation stated in these instructions does not bring them within the situation presented in Hamell v. St. Louis Public Service Co., Mo.App., 268 S. W.2d 60.

Appellant's final assignment clearly demonstrates that counsel for appellant failed to read and comply with Supreme Court Rule 83.05, V.A.M.R. printed in the April, 1963 Docket, when preparing appellant's brief in this case.

■ The assignment is as follows: "The Trial Court erroneously overruled plaintiff's motion for new trial for the reason that plaintiff was denied the right to a fair and impartial trial by reason of prejudicial errors of the trial court in: a) Admitting over the objection of plaintiff improper, incompetent and prejudicial evidence offered by defendant; b) Permitting prejudicial and improper statement, comments, and arguments by defendant's counsel, over proper objection by plaintiff; c) Sustaining the objections of defendant's

counsel to proper argument, statements and comments of plaintiff's counsel; d) Admitting, over the proper objection of plaintiff, prejudicial hearsay opinion evidence; e) Sustaining objection to proper argument of plaintiff's counsel that the doctors mentioned in cross-examination by defendant's counsel as being experts in their field were not called to testify by defendant; all of said errors, materially and prejudicially affecting the merits of plaintiff's cause, thereby depriving plaintiff of a fair, impartial and dispassionate consideration by the jury."

Supreme Court Rule 83.05(c) provides that, "The fair and concise statement of the facts shall be in the form of a statement of the facts *relevant* to the questions presented for determination." The statement of facts in appellant's brief does not present any basis whatsoever for the matters assigned as error under subdivision III of appellant's brief.

Further, except for possibly III (e) there has been no attempt to comply with Supreme Court Rule 83.05(a) (3) and (e) of the rule as to points relied on, "* * * which shall show what action or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous * * *." The matters complained of are not specifically set out, nor is it "concisely stated why it is contended that the court was wrong in any action or ruling sought to be reviewed" under this general assignment as to error in the court's action in overruling plaintiff's motion for a new trial. Assuming, without deciding, that Assignment III (e) is sufficient, we find no abuse of the court's discretion in making the ruling complained of. The other subdivisions of this assignment present nothing for proper review, and they may be disregarded.

Finding no reversible error in the record presented, the judgment is affirmed. It is so ordered.

All concur.